POSTAL TEL. CABLE CO. v. CLEVELAND, C., C. & ST. L. RY. CO. et al.

(Circuit Court, N. D. Ohio, E. D. May 20, 1899.)

1. TELEGRAPHS — PROCEEDINGS TO CONDEMN RIGHT OF WAY — FEDERAL STATUTES.

Rev. St. § 5268, authorizing telegraph companies to construct their lines over and along any military or post roads of the United States, authorizes no compulsory proceedings to obtain a right of way over private property for such lines, and condemnation of such right of way can only be made by virtue of some law of the state where the property is situated.

2. SAME—STATUTES OF OHIO.

Rev. St. Ohio, § 3454 et seq., relating to telegraph companies, when construed in connection with the original acts from which they were transferred by the compilers, with some change of language, must be held to limit the right to maintain proceedings for the condemnation of rights of way for their lines to telegraph companies organized under the laws of the state. Hence a federal court cannot entertain a suit by a telegraph company of another state to condemn a right of way for its lines in Ohio.

Henry & Robert Newbegin and Loesch Bros. & Howell, for plaintiff.
Judson A. Harmon and E. A. Foote, for defendants.

RICKS, District Judge. In this action the Postal Telegraph Cable Company, a corporation and citizen of the state of New York, seeks to appropriate for its use the easement or right of way to construct, maintain, and operate its telegraph line, and the necessary fixtures and appurtenances thereto, "in accordance with law," on and over and within five feet of the outer southerly limits of the respondent railway company's right of way, from the southwesterly corporation limits of the city of Cleveland, Cuyahoga county, Ohio, to and through the counties of Cuyahoga, Lorain, Huron, Richland, Crawford, Morrow, Marion, Hardin, Logan, Shelby, and Darke, to the town of Union City, on the state line between Ohio and Indiana. The Cleveland, Cincinnati, Chicago & St. Louis Railway Company is a corporation organized under the laws of Ohio, and is a citizen of said state. The Union Trust Company, the other defendant, is a corporation organized under the laws of Indiana, a citizen of Indiana, and is trustee under a general mortgage executed by the defendant railroad company to secure the first mortgage bonds of said company to the amount of $50,000, and which mortgage is a lien upon the right of way sought to be appropriated. There is the necessary allegation of the jurisdictional value of the matter in dispute, and also an allegation that the complainant has filed with the postmaster general of the United States its written acceptance, pursuant to section 5268 of the Revised Statutes of the United States, of all the restrictions and obligations required by law, and thereby secured the right to construct, maintain, and operate its lines of telegraph upon all post roads in the United States, but so as not to interfere with the ordinary travel on such post roads. The right of way of the railroad company is about 100 feet in width, and said railroad is a post road, under the laws of the United States. The Western Union Telegraph Company, a rival corporation, by virtue of a contract with the railroad company occupies the northerly line of said right of way of the railroad company between the city of Cleveland and Union City, the terminal points of the line sought to be appropriated; and the plaintiff alleges that the contract between the Western Union Telegraph Company and the railroad company assured to said the Western Union Telegraph Company, so far as it legally might, the exclusive use of said right of way for telegraph purposes, contrary to the laws of the United States and of the state of Ohio, and that the railroad company refuses to agree with the plaintiff upon a sum to be paid by way of just compensation for the easement sought to be acquired by this proceeding.

The defendant the Cleveland, Cincinnati, Chicago & St. Louis Railway Company moves the court to dismiss this proceeding and the petition on the following grounds, to wit:

"(1) The same are not authorized by any law of the United States. (2) The same are not authorized by any law of the state of Ohio. (3) This court has no jurisdiction of this proceeding. (4) The petitioner has no right to appropriate this defendant's property, or any part thereof, or any rights therein, by judicial proceedings or otherwise. (5) For defect of parties defendant."

Judge Dillon, in his work on Municipal Corporations (section 482), says that "the tribunal by which the amount of compensation to the landowner is to be determined must be prescribed by positive law"; and the supreme court of Ohio, in the case of Harbeck v. City of Toledo, 11 Ohio St. 219, have held that proceedings under the Ohio laws for the appropriation of private property by corporations must be in strict accordance with such laws. It might be claimed that the legislature of the state of Ohio intended to confer exclusive jurisdiction in condemnation proceedings on the probate courts of the state. The first section of chapter 8, tit. 2, Rev. St. Ohio (being section 6414), provides that "appropriations of private property by corporations must be made according to the provisions of this chapter." Section 6416 of that chapter provides that the petition must be filed with the probate judge, and the whole chapter seems to confine the proceedings to the probate court. But, when the procedure under the laws of a state differs from that of the federal courts, the state laws must give way to the practice of the federal courts. Kohl v. U. S., 91 U. S. 367. If this proceeding is a suit at common law, jurisdiction is vested in the circuit courts of the United States, for the proper allegations as to citizenship and amount involved are made in the bill. Boom Co. v. Patterson, 98 U. S. 403; Martin v. Railroad Co., 151 U. S. 673, 14 Sup. Ct. 533. That it is a suit admits of no question. Kohl v. U. S., 91 U. S. 367; Weston v. City Council of Charleston, 2 Pet. 464.

If the federal courts have jurisdiction in such cases when removed from the state courts, there is no good reason why they have not original jurisdiction, as well. We come, therefore, to the question whether the appropriation sought to be made is authorized by any law of the United States. If the Postal Telegraph Cable Company were a corporation organized under the laws of the United States, for purposes in which the government had a direct interest, it might be claimed that such power was granted. The act of July 24, 1866, made no provision for compensation or payment for property to be taken; hence the procedure cannot be sustained by virtue of that act. The supreme court, in Pensacola Tel. Co. v. W. U. Tel. Co., 96 U. S. 1, distinctly say:

"It gives no foreign corporation the right to enter upon private property, without the consent of the owner, and erect the necessary structures for its business; but it does provide that, whenever the consent of the owner is obtained, no state legislation shall prevent the occupation of post roads for telegraph purposes by such corporations as are willing to avail themselves of its privileges. * * * No question arises as to the authority of congress to provide for the appropriation of private property to the uses of the telegraph, for no such attempt has been made. The use of public property alone is granted. If private property is required, it must, so far as the present legislation is concerned, be obtained by private arrangement with its owner. No compulsory proceedings are authorized. State sovereignty under the constitution is not interfered with. Only national privileges are granted."

And in the case of Postal Telegraph Cable Co. v. Southern Ry. Co., 89 Fed. 190, the court say:

"Rev. St. § 5263, authorizing telegraph companies to construct their lines over and along any military or post roads of the United States, does not give such companies the right to build their lines over the right of way of a rail-

road, or other private property, without the consent of the owner, or the condemnation of the right of way over such property in accordance with the laws of the state where situated."

And this was the holding of Judge Taft in the case of W. U. Tel. Co. v. Ann Arbor R. Co., 33 C. C. A. 113, 90 Fed. 379.

Is this action, then, authorized by any law of the state of Ohio? The only claim of grant from the state of Ohio is founded on the language of Rev. St. § 3454 et seq. Section 3454 reads as follows:

"A magnetic telegraph company heretofore or hereafter created may construct telegraph lines from point to point along and upon any public road by the erection of the necessary fixtures, including posts, piers and abutments necessary for the wires; but the same shall not incommode the public in the use of such road."

And section 3456, providing for the appropriation of land, begins with the words, "Any such company"; and section 3459 begins with the words, "The right of such company to use lands held by a railroad company," etc. The defendant claims that this language does not, in terms, purport to grant the right to foreign corporations, and that, taking it as it reads, with the rule of strict construction recognized by all courts, and the fact that the petitioner is a corporation of the state of New York, the language, though general, must be held to apply only to Ohio corporations, and that express terms or unavoidable implication would be required to confer this extraordinary right on a foreign corporation. The above sections are a revised form of the acts of May 1, 1852 (50 Ohio Laws, p. 274, § 47), and of March 31, 1865 (62 Ohio Laws, p. 72), the title and terms of which plainly limit the rights conferred to Ohio corporations. The title, of course, was omitted in the revision, and the phrases of limitation discarded as unnecessary; and it is therefore asserted that the Revised Statutes must be held to have no broader scope and meaning than the original act, and afford no foundation for the claim that they give the petitioner the right it here seeks to assert. An examination of the original acts which were the basis of the Revised Statutes will be necessary to a correct conclusion on this point. Section 47 of the act of May 1, 1852, corresponding to section 3454 of the Revised Statutes, reads:

"The corporation hereby created is authorized to construct said telegraph line or lines from point to point," etc.

Section 6 of the act of March 31, 1865, corresponding to section 3455 of the Revised Statutes, reads:

"Any magnetic telegraph company incorporated under the laws of this state may construct," etc.

Section 1 of the act of March 31, 1865, corresponding to section 3456 of the Revised Statutes, reads:

"That any magnetic telegraph company heretofore incorporated, or that may hereafter be incorporated under any law of this state, is authorized to enter upon any land, whether held by an individual or by a corporation," etc.

Paragraph 2 of section 1 of the act of March 31, 1865, corresponding to section 3457 of the Revised Statutes, reads:

"No magnetic telegraph company incorporated under any law of this state shall be authorized, without the consent of the owner in writing," etc.

It will be seen that a substantial change in the language of the law has been made by the commission of revision. This revision was made under the act of March 27, 1875 (72 Ohio Laws, p. 87). The supreme court of Ohio, in Allen v. Russell, 39 Ohio St. 336, in discussing this revision, say:

"Where one or more sections of a statute are repealed, and re-enacted in a different form, the fair inference is, in general, that a change in the meaning was intended, though even in such a case the intention may have been to correct a mistake or remove an obscurity in the original act, without changing its meaning. But where all the general statutes of a state, or all on a particular subject, are revised and consolidated, there is a strong presumption that the same construction which the statutes received, or, if their interpretation had been called for, would certainly have received, before revision and consolidation, should be applied to the enactment in its revised and consolidated form, although the language may have been changed. Gardener v. Woodyear, 1 Ohio, 170, 176; Swazey's Lessee v. Blackman, 8 Ohio, 5, 20; Ash v. Ash, 9 Ohio St. 383, 387; Tyler's Ex'rs v. Winslow, 15 Ohio St. 364, 368; Williams v. State, 35 Ohio St. 175; State v. Jackson, 36 Ohio St. 281, 286; State v. Shelby Co. Com'rs, 36 Ohio St. 326; State v. Vanderbilt, 37 Ohio St. 590, 640; Bish. Writ. Laws, § 98. Of course, if it is clear from the words that a change in substance was intended, the statute must be enforced in accordance with its changed form. Id. The commissioners appointed under the act of 1875 (72 Ohio Laws, p. 87) were required to revise and consolidate the laws of a general nature, and make report to the general assembly. They determined that the best way to perform that duty was to arrange all the general laws under proper heads, and report the same to the general assembly in the form of a bill. Their power to change was very limited. It was confined to 'making alterations to reconcile contradictions, supply omissions, and amend imperfections in the original acts, so as to reduce the general statutes into as concise and comprehensive a form as is consistent with the clear expression of the will of the general assembly.' Their power to change did not extend to matters of substance, like the right to a homestead. The commissioners were vested with no legislative power. They could recommend, and that was all, and the bill which they prepared obtained its vitality solely from its adoption by the general assembly. Changes were undoubtedly made in the bill by the general assembly, but they were not numerous. That the rule which I have stated as applicable to revisions should be applied to the Revised Statutes can admit of no doubt."

I do not think it is clear, from the words of the revision, that a change in substance was intended, and therefore am of opinion that these sections must receive the same construction they would receive if yet standing in the original act of March 31, 1865. The plaintiff company not being a corporation organized under the laws of this state, the first and second grounds of defendant's motion are sustained, and the bill will be dismissed.