was done to ascertain the construction our courts have placed upon words similar to those used in the will of Alonzo Beem, which were determinative of the questions presented for decision in those courts.

We are of the unanimous opinion that the judgment of the common pleas court is right, and should be affirmed.

*Judgment affirmed.*

Shields and Lemert, JJ., concur.

---

Roosevelt Hotel Bldg. Co. v. City of Cleveland,
ET AL.

*Municipal corporations—Appropriation of private property for street widening—Insolvency court enjoined from proceeding with appropriation—Statutory and charter provisions strictly construed—Sections 3679 and 3680, General Code—Sections 87, 143, 144 and 145, Cleveland Charter—Declaratory resolution and notice thereof to property owners—Mandatory and conditions precedent to ordinance directing appropriation—Plan to be submitted to and approved by city plan commission—Section 214, Cleveland Municipal Code—Reference to directory resolution in ordinance of intention to appropriate, insufficient—Constructive plan and estimated plan required—Notice of both directory resolution and intention to appropriate, mandatory—Widening of small portion of large thoroughfare, abuse of discretion—Evidence that plan and estimated cost not adopted—Building permit issued after resolution of intention to appropriate passed.*

1. Injunction to restrain insolvency court from proceeding with appropriation of private property for street widening will lie, where pleadings and record raise question whether appropriation is for public use.

**54**     Ohio Appellate Reports.

Roosevelt Hotel Bldg. Co. *v.* Cleveland.    [25 Ohio

2. Injunction will lie to restrain insolvency court from proceeding with appropriation of private property for street widening, where pleadings and record raise issue of abuse of power or bad faith.

3. Charter and statutes respecting appropriation of property by municipality are to be strictly construed in appropriation proceedings to determine whether they have been complied with.

4 Under Cleveland City Charter, Sections 144, 145, and Sections 3679 and 3680, General Code, resolution by city council, declaring intention to appropriate property for public use, and notice to owners of property of such declaration, are mandatory and conditions precedent to passage of ordinance directing appropriation.

5. Failure to submit a general plan under Cleveland Municipal Code, Section 214, bears on the question of intention to go forward with street widening within reasonable time or to hold project in abeyance, or discontinue it entirely, in determining whether appropriation is for public use and whether there has been manifest abuse of power.

6. Reference to widening of avenue as stipulated in resolution declaring city's intention to appropriate property therefor *held* not compliance with Cleveland Municipal Code, Section 214, requiring submission of plan and location to city plan commission.

7. Plan for street widening, required under Cleveland Municipal Code, Section 214, in appropriation proceedings, involves every principle applicable to plan for erection of structure, which includes everything except specifications.

8. In proceedings to appropriate property for street widening, service of notice on owners of resolution providing for appropriation of property, required under Cleveland City Charter, Section 145, and Section 3679, General Code, does not dispense with service of notice of resolution declaring intention to appropriate property, required under Cleveland City Charter, Section 144, and Section 3680, General Code; the two sections being co-related.

9. Where no notice was given owners of property sought to be appropriated for street widening, of resolution declaring intention to appropriate, and no plans were submitted to city plan commission, as required by Cleveland City Charter, Sections 87, 144, and 3679, General Code, no

property could be appropriated without depriving owners of due process of law.

10. Resolution and ordinance, under Cleveland City Charter, Section 145, and Section 3680, General Code, providing for appropriation of property for street widening, *held* materially defective, where city plan commission had no notice.

11. Under Cleveland City Charter, Section 144, and Section 3679, General Code, property is sought to be appropriated for public use at time when resolution declaring intention to appropriate is passed, and not on passage of ordinance directing appropriation, required under Cleveland City Charter, Section 145, and Section 3680, General Code, and hence property owners must be notified of declaratory resolution.

12. Widening of only small portion of large avenue, which would cause congestion of traffic and destroy symmetry of avenue, would be abuse of power and against public welfare.

13. Under Cleveland Municipal Code, Section 214, widening of large thoroughfare requires constructive plan of such general nature that all people affected could contemplate it, together with estimated cost showing how property owners and taxpayers will be affected.

14. Issuance of permit to build hotel on sidewalk line after passage of resolution declaring intention to appropriate part of property for street widening is evidence to show that general plan for widening and estimated cost had not been adopted, as required by Cleveland Municipal Code, Section 214.

(Decided December 13, 1926.)

APPEAL: Court of Appeals for Cuyahoga county.

*Messrs. Mooney, Hahn, Loeser & Keough,* for plaintiff.

*Mr. Carl Shuler,* director of law, and *Mr. Alfred Clum,* for defendants.

SULLIVAN, J. This cause is here on appeal from

56 OHIO APPELLATE REPORTS.

Roosevelt Hotel Bldg. Co. v. Cleveland. [25 Ohio

the court of common pleas of Cuyahoga county, and it is sought by injunctive process to restrain the insolvency court from proceeding further in proceedings begun therein for the appropriation of private property for public use, wherein the city of Cleveland and Carl F. Shuler, director of law, are plaintiffs, and the Roosevelt Hotel Building Company is the defendant.

In order to sustain its action, the city depended upon certain legislation of the Legislature and the city council as a basis for its right to appropriate some 20 x 100 feet off the north end of property known as the Jacob Babin property, located on Euclid avenue, for the purpose of widening Euclid avenue, and this legislation consists of a resolution passed by the council of the city of Cleveland on June 15, 1925, declaring the necessity of widening Euclid avenue from East Fifty-Fifth street to East Sixty-Ninth street by appropriating 20 x 100 feet, and another resolution by said body passed January 11, 1926, as well as an ordinance adopted thereafter by the same body March 22, 1926, designated as in pursuance of the resolution declaring the necessity, of date January 11, 1926.

The charter of the city of Cleveland, effective January 2, 1924, contains the following provisions with reference to the appropriation of property:

"Section 143. *Appropriation authorized.* Property within the corporate limits of the city may be appropriated for any public or municipal purpose and, subject only to the limitations imposed by the Constitution of the state, such appropriation shall be made as herein provided. By such appropriation the city may acquire a fee-simple title or any less estate, easement or use. Appro-

priation shall be made according to the require-
ments of, and as provided by, general law.

"Section 144. *Declaratory Resolution.* When it
is deemed necessary to appropriate property the
council shall adopt a resolution declaring such in-
tent, defining the purpose of the appropriation,
setting forth a pertinent description of the prop-
erty, and the estate or interest therein desired to
be appropriated.

"Section 145. *Notice to Owners.* Immediately
upon the adoption of such resolution, for which
but one reading shall be necessary, the director
of finance shall cause written notice thereof to be
given to the owner, person in possession thereof,
or having an interest of record in, every piece of
land sought to be appropriated, or to his authorized
agent; and such notice shall be served by a person
designated for the purpose, and return made in
the manner provided by law for the service and
return of summons in civil actions. If such owner,
person, or agent, cannot be found, notice shall be
given by publication once a week for three con-
secutive weeks in a newspaper of general circula-
tion in the city, and the council may thereafter
pass an ordinance directing such appropriation to
proceed."

Sections 3679 and 3680, of the General Code of
Ohio, contain the exact provisions contained in Sec-
tions 144 and 145 of the charter above quoted.

Under the charter there are provisions for what
is known as the city plan commission, and the
section relating thereto, applicable to the case at
bar, is as follows:

"Section 87. There shall be a city plan commis-
sion consisting of such number of members and

58    OHIO APPELLATE REPORTS.

Roosevelt Hotel Bldg. Co. *v.* Cleveland.    [25 Ohio

appointed for such terms as the council may by ordinance prescribe. Members of the city plan commission shall be appointed by majority vote of all the members of the council. The city plan commission shall have the power to control, in the manner provided by ordinance, the design and location of works of art which are, or may become, the property of the city; the plan, design, and location of public buildings, harbors, bridges, viaducts, street fixtures and other structures and appurtenances; the removal, relocation and alteration of any such works belonging to the city; the location, extension and planning of streets, parks and other public places, and new areas; and the preparation of plans for the future physical development and improvement of the city.''

Section 214 of the Municipal Code of the city of Cleveland, which relates to the duty of council and the power of the commission, is as follows:

''Section 214. *Extension of Streets.* Hereafter no street shall be extended, widened, opened or vacated by the city of Cleveland until and unless the plan and location of such extension, widening, opening, or vacation shall have been submitted to and approved by the city plan commission. Whenever any ordinance or resolution relating to the plan or location of any street extension, street widening or the opening of a new street or any ordinance vacating any street is introduced into the council, the clerk of council shall upon its introduction furnish the commission a copy of such ordinance or resolution, and the commission may, if it is deemed advisable, make a report in relation thereto for the consideration of the council. If no report is submitted within twenty days after

the receipt of such copy the commission shall be deemed to have approved the provisions of such ordinance or resolution.''

Euclid avenue is a trunk line thoroughfare leading from the Public Square easterly through the city, and is closely built up, with modern buildings on both sides of the street, and the property in question sought to be appropriated is between East Fifty-Fifth street and East Sixty-Ninth street and fronts on Euclid avenue. The business structures on both sides of the street as it now is abut on the street, without taking under consideration the subtraction of the 200-foot strip, which plan, if adhered to, would generally set the buildings on both sides of Euclid avenue back from their present locations a distance of 20 feet. And this is the situation, as appears from the record, at the time the land in question is sought to be appropriated for a public use, to wit, the widening of Euclid avenue.

The question raised by the prayer of the petition for injunctive relief is that the taking of the property in question is not for a public use, and that the legislation enacted is not sufficient to clothe the city with the power to appropriate. It is also claimed that the constitutional rights of the plaintiff are violated in the attempt to take the property in question in the state of the present legislation.

On the other hand, it is claimed by the city that it has followed the provisions of the law, and that, therefore, under the right of eminent domain, its right to take the property for a public use is unquestioned, and it further denies the power of the court to grant injunctive relief, for the reason that there is an adequate remedy at law, and that the

60      Ohio Appellate Reports.

Roosevelt Hotel Bldg. Co. *v.* Cleveland.    [25 Ohio

questions raised in the case at bar can be determined in the appropriation proceedings pending in the insolvency court.

The plaintiff claims on the other hand that the insolvency court has no jurisdiction to try the question at issue in the instant case, because the essential issue is whether, under the record of the case, the taking of the property is for a public use. We think that there is no doubt about the right, under the pleadings and the record, to grant injunctive relief and restrain the proceedings to appropriate, providing the issue is to determine whether the taking is for a public use, or whether such a use will sustain the compulsory taking of private property; in other words, the issue involved in the present suit is not the appropriation of property, nor the widening of Euclid avenue, but it strikes at the very root of the controversy, to wit, whether the city can be stopped at the very threshold of its effort in attempting to take the property at all, for reasons apparent in the record.

There is a long line of authorities holding that, under the issues raised by the pleadings and the record herein, injunction will lie to halt further proceedings in the appropriating court.

In the case of *Erie Railroad Co.* v. *City of Youngstown,* 5 C. C. (N. S.), 332, 16 C. D., 679, decided at its October, 1904, term, by the circuit court of Mahoning county, wherein sat Cook, J., Laubie, J., and Burrows, J., very able and distinguished judges, the court held:

"In a proceeding by the council of a municipal corporation to appropriate property against the will of the owner, for the purpose of extending a street, it is necessary for the council to pass the

preliminary resolution, and give notice to the owners of the land as required by Section 1536-105; but the probate court before which application is made to assess compensation has no jurisdiction to determine whether or not the preliminary resolution so required was passed, and the notice given; the only remedy of the landowners in such case is an action to restrain the municipality from proceeding to assess compensation, and from taking possession of the property."

The court in this *Erie Railroad case,* in its opinion, at page 335, quotes *Railway Co.* v. *City of Greenville,* 69 Ohio St., 487, 69 N. E., 976, wherein it was held that under circumstances like those in the case at bar "the only remedy is by a suit in equity for an injunction." Further on we find the following quotation on the question whether there is an adequate legal remedy, as insisted on by the city in the instant case:

"A party has no adequate legal remedy if it exists wholly in the discretion of a court. To be adequate and legal it should be one that he can invoke without let or hindrance, as the assertion of his rights."

Injunction will also lie to prevent appropriation proceedings where there is raised the issue of abusive power or bad faith, as well as where there is a question whether the use is a public one. Courts have gone so far as to hold that, even where the Legislature designates the use as public, judicial inquiry into the fact may follow.

In *Sargent* v. *Cincinnati,* 110 Ohio St., 444, 144 N. E., 132, we find authority supporting the *Erie Railroad Co. case, supra,* and we quote therefrom the following, at page 451 (144 N. E., 134):

62   OHIO APPELLATE REPORTS.

Roosevelt Hotel Bldg. Co. *v.* Cleveland.   [25 Ohio

"It is not doubted that many of the preliminary inquiries in an ordinary appropriation proceeding are purely political in nature and legislative rather than judicial. The power of eminent domain is an attribute of sovereignty which may be exercised by the Legislature itself, or that power may be delegated to other governmental agencies, and as a general rule the only limitation upon this legislative authority is that there must not be an abuse of the power granted or bad faith in its existence or exercise.

"All these legislative functions relate to the necessity and exigency of the taking, but owners of private property may judicially inquire whether the specified use is a public use or whether such use will justify or sustain the compulsory taking of private property, and, even though the legislative authority has declared the use to be a public one, the courts may properly inquire into the good faith of such declaration and whether there has been a manifest abuse of power."

Many authorities support this view. We content ourselves by citing a few of them only: *White's case,* 2 Overton (Tenn.), 109; *Isleworth Grove Co. v. Orange County,* 79 Fla., 208, 84 So., 83; *In the Matter of Opening Willis Avenue,* Howell N. P., (Mich.), 265; *Morehouse* v. *Norwalk,* 6 W. L. B., 267, 6 Dec. Rep., 199; *Ligare* v. *City of Chicago,* 139 Ill., 46, 28 N. E., 934, 32 Am. St. Rep., 179.

Under these authorities we hold that injunction lies for the granting of the relief prayed for, for the reason that the questions involved are judicial inquiry as to whether the property sought to be appropriated is for a public use in contemplation

of law, and whether, under the record, there is a manifest abuse of power.

Examining the record for the purpose of ascertaining whether the provisions of the charter and the statutes, with respect to the appropriation of property by a municipality, have been complied with, we are bound by the rule of strict construction, because the authorities are numerous that the sovereign in taking the citizen's property for public uses must strictly and specifically conform to the laws, and the holdings have gone so far as to say that where the provisions of the law are plain and unambiguous they cannot be tampered with—even by judicial interpretation.

In *State* v. *Schlatterbeck,* 39 Ohio St., 268, at page 271, there was a holding that, where "the language of the statute is plain, its provisions in harmony, and the enforcement of the act, according to its terms, will not lead to absurd results," the rules of interpretation will not be applied.

In *Harbeck* v. *Toledo,* 11 Ohio St., 219, opinion by Peck, J., we find the following syllabus:

"The power conferred upon a municipal corporation to take private property for public use must be strictly followed; and therefore, where the statute required the corporation as a substitute for personal service upon the owners, to publish 'a copy of the application with a statement of the time and place at which it is to be made,' the publication of a notice of the time and place for making the application, describing therein the property and the purposes for which it is to be taken, but not accompanied by a 'copy of the application,' is not a compliance with this statutory prerequisite,

64          OHIO APPELLATE REPORTS.

Roosevelt Hotel Bldg. Co. v. Cleveland.          [25 Ohio

and does not confer upon the court or judge authority to make an order appropriating the lands.''

This decision was followed in *Harbeck* v. *City of Toledo,* 11 Ohio St., 226, and from an examination of the authorities it is the law at the present time.

We cite the following:

*Allen* v. *Jones,* 47 Ind., 438, holds that the right of eminent domain can be exercised only in the instances mentioned and in the manner provided by law.

*Garvin* v. *City of Columbus,* 5 N. P., 236, 240, 5 O. D., N. P., 333, holds that in proceedings by a city to appropriate property for public use the requirements of the statute must be strictly complied with.

*Adams* v. *Town of Clarksburg,* 23 W. Va., 203, and *Grant* v. *Hyde Park,* 67 Ohio St., 166, 65 N. E., 891, hold that the delegation of the power of eminent domain to a village, being in derogation of common law, must be strictly pursued. *Harner* v. *Columbus Street Ry.,* 29 W. L. B., 387, 11 Dec. Rep., 807, holds same as to street railways attempting to exercise power of eminent domain. See, also, *Postal Teleg. Cable Co.* v. *Cleveland, C., C. & St. L. Ry. Co.,* (C. C.), 94 F., 234. *Fisher* v. *Graham,* 1 Cin. Super. Ct. Rep., 113, 13 Dec. Rep., 447, contains dissenting opinion on the same point.

*City of Cincinnati* v. *Corry,* 23 W. L. B., 359, 10 Dec. Rep., 783, holds that a notice of a resolution to change the grade of a street should contain all the material facts so that a landowner may know how his property will be affected by the change.

*Bank of Columbia* v. *City of Portland,* 41 Or., 1, 67 P., 1112, holds that where the statute authorizing street improvements provides that notice should

be posted, the heading to be in letters not less than one inch in length, such statute must be strictly complied with and letters three-fourths of an inch high are not sufficient.

With the rule of strict construction established by these authorities, it is disclosed by the record that on the 6th of April, 1925, the city council passed an ordinance fixing a building line 20 feet back of the established street lines on each side of Euclid avenue from East Fifty-Fifth street to University Circle, and prohibiting the erection of any building on this strip. Later, in federal court there was a decree for the plaintiff Jacob Babin, the person named in the record. By this decision this ordinance, so far as widening Euclid avenue is concerned, came to naught, and is only referred to as bearing upon the question whether the city had originated a formula and general plan for the widening of Euclid avenue 20 feet on each side thereof.

On June 15, 1925, the council adopted a resolution declaring the necessity for widening Euclid avenue from East Fifty-Fifth street to East Sixty-Ninth street by appropriating 20 feet off both sides thereof. The authority for the passage of this declaratory resolution was Section 144 of the charter of the city of Cleveland, herein set forth.

It will be noted that the eastern extension, instead of being University Circle, as in the ordinance of April, 1925, was East Sixty-Ninth street, and this material change on the part of the city is vital in considering the question whether or not the appropriation is for a public use, because the strip from East Fifty-Fifth street to East Sixty-Ninth street is but a small section, comparatively speaking, of Euclid avenue, which, as before stated,

66    OHIO APPELLATE REPORTS.

Roosevelt Hotel Bldg. Co. *v.* Cleveland.    [25 Ohio

is one of the trunk line highways of the city of Cleveland.

Now in passing this declaratory resolution under Section 144, it appears from the record that, instead of the city continuing to proceed by complying with Section 145 of the charter, the proceedings, so far as the record is concerned with respect to the resolution of June 15, 1925, then and there ended, with the exception that, under Section 214 of the charter, the resolution was submitted to the city plan commission, which, under Section 87 of the charter, had power to control, in the manner provided by ordinance, the extension and planning of streets, upon which body, under Section 214, copies of all ordinances and resolutions relating to the plan, location, or widening of streets, shall be served.

Section 145 provides that immediately upon the adoption of such resolution the director of finance shall cause written notice thereof to be given to the owner of every piece of land sought to be appropriated, and the section specifically sets forth the manner and method of notice, and designates that there shall be service of the notice by a person designated for the purpose, and that return shall be made in the manner provided by law for the service and return of summons in civil actions; and, in the absence of personal notice, notice by publication is provided for. ' It is further provided that ''Council may *thereafter* pass an ordinance directing such appropriation to proceed.''

It is conceded, with respect to the resolution of June 15, 1925, that Section 145 as to notice to owners immediately upon the adoption of such resolution was not complied with, and inasmuch as

these Sections, 144 and 145, are the same as Sections 3679 and 3680, General Code, it follows that the statutes themselves with regard to notice to the owners were ignored, and that this failure of compliance with the statutory and charter requirements is vital and material there can be no question. There is no doubt about the intent and purpose of the Legislature in reference to the sections of the statute cited, or of the intent and purpose of the legislative body of the city of Cleveland when it adopted these sections of the charter, made effective January 2, 1924. The words, "immediately upon the adoption of such resolution," cannot be misunderstood, and therefore may not be misinterpreted. The purpose and intent are obvious and irresistible. When the declaratory resolution was passed, it became the immediate duty of the city to comply specifically with the provisions of Section 145, and as to the passage of the ordinance the council acquired the power and jurisdiction to pass it only after notice to owners of the property sought to be appropriated immediately upon the adoption of such resolution; for no other conclusion is possible, having in contemplation the following language which concludes Section 145, to wit:

"And the council may thereafter pass an ordinance directing such appropriation to proceed."

Thus it is clear that the declaratory resolution was in the nature of a condition precedent to the passage of the ordinance directing the appropriation, and was the mandatory instrumentality and prerequisite which gave life and legality to the ordinance directing the appropriation.

It does not require abstruse analysis to reach the legislative mind in determining the purpose of

enacting Section 145. What more natural or just act can there be on the part of the city after it declares its intention to widen a central and conspicuous public artery, lined to its sidewalks with modern structures, than to notify all within the territory of the declaration of its intention, not only to appropriate their property, but to make them vacate and raze that portion of the structures which may happen to be embraced within the 20 feet sought to be appropriated?

There are obvious reasons for the passage of such legislation, among them being the right of the owners of property to know in advance, at the taking of the first step, of the intent of the city to take their property, so that they may provide for or against the emergencies which they are compelled to meet. Hence the legislative mandate.

As to the passage of this declaratory resolution, none of the property owners in the affected territory was given any notice, notwithstanding the mandatory requirements of Section 145, and under the authorities above quoted, in proceedings to appropriate, strict observance of the provisions of the law must be complied with, not only in spirit, but in the letter.

Although a copy of this resolution was served on the city plan commission, yet it is clear that under Section 214, quoted herein, no general plan for the widening of Euclid avenue, as contemplated by law, was submitted to and approved by the city plan commission, and this observation is made on account of its bearing upon the question whether it was the intent to go forward within a reasonable time, and widen Euclid avenue, under the ordinance of June 15, 1925, or whether it had been decided to

hold the project in abeyance, or discontinue it entirely for the time being. All these questions bear upon the point whether the appropriation is for a public use and whether there has been a manifest abuse of power in the proceedings to appropriate.

It will be observed that Section 214 says that no street shall be widened until and unless the plan and location shall have been submitted to and approved by the city plan commission. So far as the record is concerned there was no plan, for it cannot be said that the reference to the widening of Euclid avenue, as stipulated in the resolution, was even in the nature of the submission of a plan as contemplated by the sections quoted.

Webster says a plan is a method of action, procedure, or arrangement, a draft, a diagram, a design. In the widening of a street, a plan would involve every principle applicable to a plan for the erection of a structure, and a plan in a structure is everything except the specifications.

It is our judgment that a plan of this character was under contemplation in the provisions cited.

It is claimed by the city that it was unnecessary to serve the owners with notice of the passage of the resolution of June, 1925, for the reason that on January 11, 1926, the city council, pursuant to Section 144, adopted a resolution declaring the necessity of widening Euclid avenue by appropriating 20 feet off the front of plaintiff's property alone, and the passage of an ordinance on March 22, 1926, pursuant to Section 145 of the charter, providing for the appropriation of 20 feet off of the front of plaintiff's property, and that inasmuch as notice of the passage of this resolution was served upon that owner it became unnecessary to serve the own-

70          OHIO APPELLATE REPORTS.

Roosevelt Hotel Bldg. Co. *v.* Cleveland.    [25 Ohio

ers with notice of the passage of the declaratory resolution of June, 1925.

This claim is not well founded because of the legal connection between the provisions of Sections 144 and 145, the notice to the owners, and the declaratory resolution, which cannot be separated. They are co-related. The notice mentioned in Section 145 adheres unmistakably to the declaratory resolution of Section 144, and there can be no doubt about this. Otherwise the two words "such resolution" in Section 145 would not have been used. Those two words refer to the declaratory resolution passed under the authority of Section 144.

With this reasoning in view, we observe the following preamble to the ordinance of March 22, 1926:

"Whereas, on the 11th day of January, 1926, the council of Cleveland passed Resolution No. 72558, declaring the necessity and intention of appropriating the land herein described, notice of which resolution has been served on the owners, persons in possession or having an interest of record in said land."

This legislation, both resolution and ordinance of 1926, absolutely ignores the resolution of June, 1925, for the reason that it specifically designates the resolution of January 11, 1926, and thus conforms to the conclusion already expressed that Sections 144 and 145 are indissolubly woven together and refer to the same specific subject-matter.

If such were the intention of council by the passage of the ordinance of March 22, 1926, it would not have specifically referred to the resolution of January 11, 1926, but, on the contrary,

would have designated the resolution of June 15, 1925, not only by its exclusion in the ordinance of March 22, 1926, but by its substitution of January 11, 1926, as it made conspicuous the fact that the ordinance meant just exactly what it said when it referred to the resolution of 1926.

The resolution of June 15, 1925, stands alone, because there was no notice to the owner as required by the legislation, and no such submission of plans to the city plan commission as required by Section 214. Standing alone, there could be no taking of the property in question, under the resolution of June 15, 1925, because of the non-compliance with the charter and statutes relative to notice to owners, and because of the inadequate submission of plans to the commission. These are fatal defects, upon which appropriation proceedings cannot be based without depriving the owners of property of due process of law. Thus the taking would be unlawful, and unless the action of June 15, 1925, and the proceedings thereunder, are connected with the legislative action of March 22, 1926, then it is conclusive that there would be no legal basis for proceedings to appropriate. But the city disowned the resolution of 1925.

The ordinance of March 22, 1926, in and of itself claims no relationship with the action of June, 1925, and, if there were any such relationship, the resolution of January 11, 1926, absolutely severs any relation which might exist, because the ordinance of March 22, 1926, depends upon the resolution of January 11, 1926, of which the owners of the property had notice, but of which the city plan commission had no notice, and no submission of

plans under Section 214 of the charter, for its approval and report.

The legislation of June 15, 1925, in our judgment, is fatally defective, because the owners had no notice, and the resolution of January 11, 1926, and the ordinance of March 22, 1926, are materially defective, because, while the owner of the property had notice, the city plan commission had no notice, so that in either case there has been a fatal noncompliance with the specific mandatory requirements of the statutes and the provisions of the charter.

If there were any foundation for the claim of the city that the legislation of 1926 depends upon the legislation of 1925, it loses all its force by the fact that with respect to the legislation of 1926 the following provisions of Section 214 were not complied with:

"Whenever any ordinance or resolution, relating to the plan or location of any street extension, street widening or the opening of a new street or any ordinance vacating any street is introduced into the council, the clerk of council shall upon its introduction furnish the commission a copy of such ordinance or resolution."

Again, if there were any ground for the contention on the part of the city that the owners of property need not be notified until the city seeks to appropriate the property, it is removed by reading Section 144 providing for a declaratory resolution, because that very resolution seeks to appropriate property, as it declares its intention so to do. Therefore the claim that the property is not sought to be appropriated until passage of

the ordinance directing the appropriation is not well founded.

Searching the entire record, there is no substantial evidence of such plan to widen Euclid avenue by taking 20 feet off of each side thereof between East Fifty-Fifth street and East Sixty-Ninth street as is contemplated by the law. The salient point of the record is the absence of any engineering plans and financial estimates applicable to the territory between East Fifty-Fifth street and East Sixty-Ninth street. As appears by the record even the territory sought to be taken in widening Euclid avenue is, comparatively speaking, such a small portion of its entire extent, that to widen the thoroughfare even between these limits would be a manifest abuse of power, because it is not only obvious from the record, but is a matter of which one's faculties cannot help but take notice, that the very purpose of widening the avenue would be defeated, because congestion of traffic, instead of its alleviation would be the result; in other words, the appropriation proceedings as outlined would not only create congestion, but would destroy the symmetry of a great avenue. Such action is against the public welfare. To widen a thoroughfare of this character a constructive plan is not only necessary, but is contemplated by the provisions of law that govern municipalities in their power to appropriate. It should be a plan of such general nature that all people affected could contemplate it and govern themselves accordingly, and before such a vast improvement involving a stupendous sum of money is undertaken a general engineering plan should not only be adopted, but an estimate of the cost, and a showing of how the property

owners and taxpayers of the city will be affected thereby, should be established and submitted to public view.

Unquestionably the purpose of the creation of the city plan commission was to furnish a medium by which property owners affected, and other taxpayers, might have access to the plans and designs contemplated by the city in the extension or widening of its streets and in the carrying out of other improvements contemplated by the charter. The absence in the record of a general plan, of the estimated cost, and the lack of any attempt to procure the same in the manner contemplated by the charter provisions, are consistent with the fact in the record that on February 24, 1926, a permit was issued by the city to the plaintiff to build a hotel on its premises at the sidewalk line. The city explains this by saying it was done on the advice of the law department in ruling that the building department was not justified in refusing the permit, simply because the declaratory resolution of January 16, 1926, had been adopted, no ordinance determining to proceed with the appropriation having been enacted, and cites *Hauser, Comm'r. of Bldgs.,* v. *State ex rel.,* 113 Ohio St., 662, 150 N. E., 42. However this may be, this permit to the owner of the property in question could have no other interpretation to the owner and the public than that the city was proceeding to the widening of a great public thoroughfare in such a manner as the law requires, and as such an extraordinary project justified, and the conclusion is inescapable that, had a general plan been adopted and estimates made, and the enterprise been initiated as the law and its immensity justified, the permit would have been

refused. There being no general plan or esti-
mate, the trend of the record seems to indicate an
attempt to widen Euclid avenue between East
Fifty-fifth and East Sixty-ninth streets by appro-
priating from plaintiff's property a strip of land
running 100 feet east and west on Euclid avenue
by 20 feet running north and south from Euclid.

In our judgment the legislation, upon which the
appropriation proceedings are based, is invalid by
reason of the noncompliance with peremptory re-
quirements of the charter and statutes. The rec-
ord fails to disclose a general plan and purpose
consonant with public use, as contemplated by law,
and, under the record, there is such manifest abuse
of power as to amount to a violation of the Con-
stitution and the laws relative to due process.

We supplement the citations herein by referring
to the able opinion of McMahon, J., rendered in the
case at bar in the common pleas court.

Holding the views herein expressed, we find and
decree in favor of the plaintiff.

*Decree for plaintiff.*

LEVINE, P. J., concurs.

VICKERY, J., dissenting. Being unable to agree
with the majority of the court in their decree en-
joining the city from prosecuting the proceedings
to appropriate the property of the plaintiff in this
action, I deem it my duty to set forth the reasons
why I dissent from the opinion of the majority.

Of course, if it is true, as contended by the
learned judge who wrote the opinion, that the reso-
lution of June 15, 1925, was a declaratory resolu-

**76** OHIO APPELLATE REPORTS.

Roosevelt Hotel Bldg. Co. *v.* Cleveland. [25 Ohio

tion to appropriate the property of the plaintiff, and other property, there would not be a dissenting opinion, but because of the utter misconception of the force and effect of that resolution on the part of the majority I find it impossible to acquiesce in the opinion.

In the opinion of the learned judge, much is made of the resolution of April 6, 1925. This is designated and known as a setback resolution, which was held to be unconstitutional by the United States court, in its suit on behalf of the plaintiff in this case. One must readily acquiesce in the decision of the United States court that for a municipality to attempt to take possession of property, or to prevent the owner from building out to the street line by declaring or by adopting a resolution widening a street, would be in effect to take people's property without due process of law and without compensation.

Just why any stress should be placed on that resolution it is difficult to say, unless it is to show that that resolution contemplated ultimately the widening of Euclid avenue from the city limits to East Fifty-fifth street, and that the resolution of June 15th did not contemplate going that far.

It must be apparent to everybody that under the present day use of public streets, particularly one so busy as Euclid avenue, it becomes a prime necessity to widen the street. That Euclid avenue needs widening every person of sound judgment must concede. Everyone with sufficient judgment to form any opinion on any subject, especially one so important as that, must necessarily conclude that to widen a street like Euclid avenue from East Fifty-fifth street east any distance is a tremendous

undertaking, one that involves the expenditure of millions of dollars, and one that can only be accomplished after years of effort and the expenditure of vast sums of money.

Now the property in question being on the south side of Euclid avenue some distance east of East Fifty-fifth street, and west of East Sixty-ninth street, for some reason had become vacant and the owner, the plaintiff in this action, was desirous of constructing a hotel upon the property. Now if the city should stand by and permit him to build an expensive structure flush out with the street, when the time came for widening the street it would simply add that much more expense to the general public in paying for the structure thus erected upon this portion of the property.

The purpose of the setback resolution of April 6, 1925, was to notify people, but the vice in it was that it kept them from building, and thus took their property without due process of law and without compensation. After the United States Court held this resolution to be invalid, the council passed the resolution of June 15, 1925, which was a sort of a declaration of an intention and purpose ultimately to widen Euclid avenue 20 feet on each side from East Fifty-fifth street to East Sixty-ninth street.

The charter provides for a city plan commission and stipulates that, before any street can be widened, the city plan commission must consent and approve of the action.

The resolution of June 15th was nothing more than a declaration of the intention of the city to widen Euclid avenue from East Fifty-fifth street to East Sixty-ninth street, a declaration of council to appropriate, but did not attempt to appropriate

78   Ohio Appellate Reports.

Roosevelt Hotel Bldg. Co. *v.* Cleveland.   [25 Ohio

any property. It simply declared the council's purpose and intention to widen Euclid avenue, and the only person or body interested at that time was the building commission, and this resolution was notice upon it. Now that resolution would only affect Babin, and others who stood like him, in that it would be notice that when the city sought to appropriate this particular piece of property it was not a desultory step, but was a step toward a great improvement which could not be accomplished all at once.

The record in this case shows that Babin had notice of the passage of that resolution, as a letter from the law director to him and his acknowledgment of service of that letter would indicate, but in my judgment it was not necessary at all to notify the property owners of that resolution; its purpose being as I have already outlined.

Now on January 11, 1926, the council just made the declaratory resolution to appropriate the property of Jacob Babin, and it was followed by the ordinance authorizing the city law director to begin appropriation proceedings March 22, 1926.

The declaratory resolution of January 11 and the ordinance of March 22 were both served upon Jacob Babin. The only parcel of property that was sought to be appropriated by that proceeding was the property of Babin, and the only reason for that apparently was the fact that Babin's property was vacant, and, inasmuch as he was about to build a substantial structure, the Roosevelt Hotel, it would be a foolhardy thing to permit the erection of such a structure and afterwards compel the public, the city of Cleveland, to pay added

damages by reason of this structure having been built.

There is nothing in the law which requires all these proceedings to be brought at once. The declaratory resolution contemplates that all people affected by that appropriation must be notified. Now it is hardly tenable to claim that the city had to bring these proceedings to appropriate all at one time. It would be physically and financially impossible so to do, and it seems to me that in the sense of economy the city would be derelict if it did not prevent the erection of expensive buildings on property which it contemplated to later appropriate.

The arguments made in the United States Court against the so-called setback ordinance do not avail here. The city council undertakes to appropriate this property, and in such appropriation the whole question of damages to the balance of the property, because of its being set back, if there be any, and the length of time that might elapse before all the property was acquired, would all be subjects of proper discussion, and damages could be fixed and adjudged by the jury for such taking, and inasmuch as there is a complete and adequate remedy at law, and council alone has authority to say when and how it shall proceed to appropriate within the law, we do not see how a court of equity is called upon to interfere in any way. The learned argument of the majority of the court, in the majority opinion in this case, placing the entire illegality of proceedings that warrant the interference of a court of equity to prevent a court of law from appropriating this property, relates wholly to the resolution of June 15, and they base their whole

80 OHIO APPELLATE REPORTS.

Roosevelt Hotel Bldg. Co. v. Cleveland. [25 Ohio

argument upon the fact that that resolution was not served upon all the property owners between East Fifty-fifth street and East Sixty-ninth street.

I have already given my views, and, I think, the city's views, of that resolution, and of the force and effect of it.

Now it must be apparent that, if a great public improvement like the widening of Euclid avenue is ever undertaken, a beginning must be made somewhere. It is common knowledge that east of Sixty-ninth street they are at intervals widening the avenue 20 feet on each side, and it has come to the knowledge of this court during the argument that, from East Sixty-ninth street for some distance east on both sides of the street, agreements have been made whereby there is to be a widening of the street in conformity with the proposed widening between East Sixty-ninth and East Fifty-fifth streets. So the city is proceeding with as much expedition and celerity as the nature of the situation allows, and there is no law that the city must appropriate and be responsible for all the vast sums that would be necessary to appropriate 20 feet on both sides from East Fifty-fifth street to East Sixty-ninth street.

The buildings are flush with the street line. The street is so narrow that it is impossible for the street to accommodate traffic, even if Carnegie and other thoroughfares are made available, and the city, acting in good faith, seeks to prevent further encroachments upon the space it intends to ultimately acquire to accommodate the growing traffic of the streets.

I think that the whole question could have been determined in the insolvency court in the appropri-

ation proceedings, and the appropriation proceedings being regular in every way, notice having been served, and the only persons interested in this property being in court, I do not see why a court of equity should interfere. For these reasons I am compelled to dissent from the opinion of the majority of the court.