287 P.2d 670

**ENTRE NOUS CLUB, a Utah corporation, Appellant,**

v.

**Lamont F. TORONTO, Secretary of State, Respondent.**

No. 8259.

Supreme Court of Utah.

Sept. 21, 1955.

D. H. Oliver, Salt Lake City, for appellant.

E. R. Callister, Jr., Atty. Gen., H. R. Waldo, Jr., Asst. Atty. Gen., for respondent.

McDONOUGH, Chief Justice.

A petition praying a restraining order against the respondent, secretary of state, to prevent his further action in a proceeding to revoke the charter of appellant, Entre Nous Club, a nonprofit Utah corporation, was dismissed in the lower court. Appellant cites the dismissal as error, contending that the secretary of state had no jurisdiction to act and was also acting under an unconstitutional statute.

U.C.A.1953, 16–6–13 provides:

"The secretary of state shall require proof from any social club, recreational or athletic association, or kindred association, incorporating under the provisions of this chapter, that such club or association is a bona fide club or association, the object of which is not for pecuniary profit; that it is organized with actual participating members; and that it will not be used for permitting gambling or any other violation of law or ordinance. If it is afterwards shown to the satisfaction of the secretary of state, *after he shall have held a hearing thereon,* of which notice shall have been given to such club or association, that any such social club, recreational or athletic association, or kindred association, was actually organized for pecuniary profit, or that such association or corporation was or is actually used for gambling or other purposes in violation of law or ordinance, the secretary of state shall revoke the charter of such corporation." (Emphasis added.)

In accordance with the power thus given him, the secretary of state, acting upon an affidavit of the chief of police of Salt Lake City setting forth certain violations and disturbances occurring on the Entre Nous premises, mailed notices to four of the eight men listed in the Articles of Incorporation of the Entre Nous Club as officers and directors. This Order to Show Cause was entitled "In the Matter of the Revocation of the Charter of the Entre Nous Club, a nonprofit corporation," was directed to the Officers of the Entre Nous Club, and began: "You and each of you are hereby directed to appear before the Secretary of State * * * then and there to show cause why the charter of the Entre Nous Club * * * should not be revoked * * *." A copy of the affidavit of the chief of police was attached.

■ Appellant argues that since no means of giving the notice required by the statute is spelled out in U.C.A.1953, 16–6–13, supra, the legislative intent must be viewed as requiring service of process in accordance with the Utah Rules of Civil Procedure for the secretary of state to obtain personal jurisdiction over the club. This argument is supported by neither the authorities cited to us nor by historical

development in the field of administrative law.

■ The Utah Rules of Civil Procedure are the rules for the government of the courts adjudicating formal contest between adverse parties, U.R.C.P., Rule 1(a) and Rule 81, Vol. 9, U.C.A.1953; clearly they are inapplicable to a proceeding before an administrative body seeking to regulate activities burdened with a public interest. Differences in the parties, the experience of the hearing officer in the particular matter, the considerations involved, and the objects to be obtained point up the need for more flexible procedure before agencies and administrative officers than is utilized in the trial of a case at law. Federal Communications Comm. v. Pottsville Broadcasting Co., 309 U.S. 134, 142–143, 60 S.Ct. 437, 84 L.Ed. 656.

■ However, although the formal pleadings are much less important in a proceeding such as this than one before the courts, and orders of an administrative body will not be set aside for technicalities if substantial rights have been protected, the due process clause of the U. S. Constitution sets certain limitations upon the sacrifice of procedure to expediency.

"* * * While hearings before administrative bodies need not have all the formality of judicial procedure but may be informal and, if suited to the matter involved, rather summary * * *, yet there are certain elements of fair play required by the Constitution which are necessary in any character of hearing affecting personal or property rights. In respect to hearings before administrative bodies (as well as judicial tribunals) those elements include (1) a reasonable time and place for hearing where interested parties may attend with reasonable effort * * *; (2) reasonable notice to interested parties * * *; and (3) a reasonable opportunity for presentation of such evidence and argument as are appropriate to the proceeding * * *." Chamber of Commerce v. Federal Trade Commission, 8 Cir., 13 F.2d 673, 683.

In the present case, the corporation received actual notice through the Show Cause Order issued to its officers, for counsel appeared specially to question the secretary of state's jurisdiction over it. But the notice as issued was not notice which we could generally characterize as "reasonably calculated to give actual notice" and was not given to the club as required by the statute. The proceeding was directed against the corporation for misuse of its corporate franchise, and hence, the corporation was the only necessary or proper party defendant and the order directing the officers to appear to defend the corporation was not sufficient notice to the corporation. 13 Am.Jur., Corporations, sec. 1331. At the time this action was begun, there was no

statutory duty upon the club to register changes in its official personnel nor to select one of them as an agent upon whom process might be served; for this reason, the notices, directing those listed as directors at the time of incorporation to appear, might never reach any person presently sufficiently interested in the club to notify it or to defend it.

It has been held that deviations from notice requirements may be the ground for the invalidation of the determinations of administrative bodies, People ex rel. v. Zoller, 337 Ill. 362, 169 N.E. 228; Roosevelt Hotel Bldg. Co. v. City of Cleveland, 25 Ohio App. 53, 155 N.E. 233. However, in some jurisdictions, actual notice or an appearance will cure defective notice, McKinley v. Lucas County, 215 Iowa 46, 244 N.W. 663; Federal Land Bank v. Flanders, 105 Vt. 204, 164 A. 539; Horstmyer v. Trial Board of City of Sacramento, 21 Cal.App.2d 533, 69 P.2d 1021. On the other hand, some courts have held that the defect cannot be cured even if the objecting parties have availed themselves of the opportunity to defend, Matthiessen v. Ott, 268 Ill. 569, 109 N.E. 260; Hatt v. Township Board, 144 Mich. 266, 107 N.W. 1058.

Thus, the question of what type of deficiency in the notice given by an administrative body will void the proceedings, when actual notice was received, becomes a question of policy—i. e., what method will best achieve fairness and expedience? Professor Gellhorn, Administrative Law Cases and Comment, p. 393 ff. suggests that the difference in cases dealing with the curability of defective notice might be explained with regard to two categories. In cases where the person attacking the agency's order is the only one entitled to receive notice, he finds that the courts generally hold that the defect is cured by an appearance or even by actual notice; on the other hand, if the agency is required to notify a number of persons, the courts have not been nearly so willing to find that the defect has been waived by the appearance of the person seeking to attack the order. He suggests:

"Technical procedural refinements unrelated to substantial consequences can only hamper the efficiency and flexibility of the administrative process. Where a person has actually been accorded a full hearing, it seems unwise to allow him later to raise the question of inadequate notice. And where the party affected appears solely to object to the defect, it is preferable to require him to defend if he does not desire an extension of time, rather than to allow him later to overturn the administrative action."

Such seems to be the situation in the present case. In Village of Sebring v. Smith, 123 Ohio St. 547, 176 N.E. 221, it was held that notice directed to Anna Smith, who had died previously, was suffi-

cient to advise her heir of the pendency of assessment proceedings. A notice improperly addressed but actually received was held sufficient in Wright v. Commissioner of Internal Revenue, 4 Cir., 101 F.2d 309. Drummey v. State Board of Funeral Directors, etc., Cal.App., 77 P.2d 912, was concerned with the revocation of embalmers' licenses and actual notice to one of the licenses, received via a copy of the personally served notice to another licensee, was held to conform to the requirements of due process. Morrison v. Selectmen of Weymouth, 279 Mass. 486, 181 N.E. 786 hold that voluntary appearance by a party entitled to notice dispenses with the necessity of formal notice.

■ Tested by the "fair play" theory of due process recognized in the cases concerning administrative law cited above, appellant had actual notice, appeared at the hearing, and was afforded opportunity to defend against the charges brought. However, it chose instead to argue only the question of the sufficiency of notice. It cannot now be heard to complain that it was hampered in any of the proceedings by lack of knowledge on its part or fairness on the part of the hearing officer.

The constitutionality of U.C.A.1953, 16–6–13 was tested in the case of Citizen's Club v. Welling, 83 Utah 81, 27 P.2d 23, a unanimous court holding that the statute was not unconstitutional as conferring judicial power upon the secretary of state. This was not a trial for crimes committed by the club or its agents, but merely the enforcement of statutory civil consequences of the violation of duties under the club charter.

■ Appellant further complains that the provision for revocation of the charter of a non-profit corporation amounts to special legislation, prohibited by Article VI, section 26 of the Utah Constitution. This court has considered the question of reasonable classification innumerable times, consistently holding that if a reasonable basis to differentiate those included from those excluded from the operation of the law can be found, it must be held constitutional. See Abrahamsen v. Board of Review of Industrial Commission, 3 Utah 2d 289, 283 P.2d 213. The law granting a charter to nonprofit clubs imposes upon all of them the duties commensurate with the rights conferred and provides that the use of the premises for the violation of law or for profit-making will result in the revocation of the charter.

■ We find no merit in the contention that because the individuals participating in unlawful gambling or sale of liquor might be punished under the criminal statutes this statute imposes an additional penalty. The action is against the club, not the individuals, and the penalty is reasonable in light of the fact that these chartered clubs are social establishments whose activities are a proper subject for regulation.

We have examined all other issues raised by this appeal and find them to be without merit. Judgment affirmed.

CROCKETT, WADE and WORTHEN, JJ., concur.

HENRIOD, Justice (dissenting).

I dissent. The statute casts the secretary of state in a tripartite role of prosecutor, judge and jury. Such power, in the hands of a tyrant (present officials excluded), obviously could be employed as an instrument of destruction. The statute provides no procedure for review by, or appeal to a judicial tribunal, but simply allows for the destruction of a vested franchise if, after a hearing, (the nature and extent of which are undefined) a showing, (the nature and extent of which likewise are undefined), is made "to the satisfaction of the secretary of state" that the corporation was used to violate the law. No provision is made requiring that findings be made or entered, and the extraordinary remedies available to a person, in my opinion, are no safeguard against a statute which, I think, not only permits but encourages the denial of constitutional guaranties against taking property and circumscribing liberties. I do not believe the magic phrase "administrative law" cures the malady this statute stands ready to spread, nor do I believe that any or all non-profit charters are issued only on condition that the corporation thus created must live unprotected from the lash of a possible despot or ignoramus, both of whom are not unknown to our political history.