## STATE v. ALTA CLUB et al.

No. 7555.   Decided June 14, 1951.   (232 P. 2d 759.)

---

See 48 C. J. S., Intoxicating Liquors, sec. 227. Amendments to statutes, language changes in. 50 Am. Jur., Statutes, sec. 275.

122

*Clinton D. Vernon,* Atty. Gen., *J. Lambert Gibson,* Asst. Atty. Gen., *Mark K. Boyle,* Deputy Atty. Gen., *Bryce E. Roe,* Deputy Atty. Gen., for appellant.

*Raymond R. Brady, John D. Rice, Benjamin Spence, Zar E. Hayes, Grant Macfarlane, Seaton Prince, Edwards F. Richards* and *J. D. Hurd,* all of Salt Lake City, for respondents.

McDONOUGH, Justice.

The Attorney General commenced this action to obtain a declaratory judgment construing certain sections of the Liquor Control Act, Title 46, U. C. A. 1943, and to have a determination as to whether certain conduct of defendant nonprofit clubs in maintaining private lockers where members store liquor lawfully purchased, is in violation of the act. From an adverse judgment, plaintiff appeals.

Most of the defendants at the time of commencement of the action held malt liquor stamps issued by the bureau of internal revenue of the United States. Sec. 46-0-157a, U. C. A. 1943 provides:

"It shall be unlawful for any person, not acting for or licensed by the commission, who holds a stamp issued by the bureau of internal revenue of the United States as a retail liquor dealer or as a retail dealer in fermented malt liquor, to have, hold, store or possess or permit other persons to have, hold, store or possess liquor in or on premises described in such stamp while such stamp remains in effect."

Plaintiff alleged violation of said section of the act, inasmuch as a number of the defendants sold beer in their respective clubhouses. After commencement of the action, it was conceded that defendants could not permit club members to keep liquor in private lockers at such clubs while defendant clubs held liquor stamps issued by the bureau of internal revenue. Consequently, defendant club operating in violation of the quoted provisions of the statute, permitted their federal malt liquor stamps to expire and discontinued the practice of selling beer on their respective

premises. No issue is presented here with reference to interpretation of the above quoted section of the act.

For many years these clubs have maintained private lockers which have been rented to club members. These lockers vary in size, but the club members renting such lockers have been permitted by the defendant clubs in each instance where desired by club members, to store liquor in such lockers. It is stipulated that since the adoption of the Liquor Control Act, the liquor which has been stored in these lockers has been without exception liquor lawfully purchased from the Liquor Control Commission, and that the club members individually have brought such liquor to such lockers where stored. In some instances only club members have keys to such lockers so that the particular club member renting such locker is the only person who has access thereto. In other instances the club maintains an arrangement whereby it has a master key to enable officials or certain employees to obtain access to such lockers.

The defendants are 11 nonprofit corporations of this state, and in their corporate capacity occupy buildings or portions of buildings, and own various types of property in connection with clubhouses, such as golf courses, and other facilities for recreation and for the preparation and serving of food. It is conceded that all of the defendants are bona fide clubs, and that none of them were organized to evade the Liquor Control Act. It is also admitted that many of the members of these clubs do not drink liquor in any form, and that the services furnished by these defendant clubs, hereinafter mentioned, have been and are furnished on the same basis to drinkers and nondrinkers alike.

In addition to the private lockers in which members leasing them may store or keep any of their personal properties, these clubs maintain club rooms, dining rooms, lounge rooms, and other rooms for recreation and social entertainment for members and their wives (and also their guests in some instances). In these rooms, whether con-

nected with or separated from the locker rooms, club members (and their guests in some cases) are permitted to use the members' lawfully purchased liquor, and also to mix the liquor with other ingredients into mixed drinks. In connection therewith, defendant clubs supply ice, glasses and various types of mixers, from fountains where soda water and soft drinks, mixers and other articles are sold to club members. Ice and soft drinks are furnished at the same price to all club members whether they use or abstain from use of liquor. In some instances the clubs collect a specified price for these articles, and in other cases an attendant either mixes a drink without charge or receives a specified fee for such service.

It is not contended by the Attorney General that the use of liquor at these clubs is the primary purpose of attendance of members at club functions. It is admitted that with respect to members who do use liquor, their drinking activities at these clubs are merely incidental to their attendance for various social, charitable or recreational purposes.

These activities are claimed by the Attorney General to be interdicted by the following provisions of the Liquor Control Act:

"46-0-237. Property Used in Connection with Violation Declared Nuisance.

"Any room, house, building, boat, vehicle, structure or place where alcoholic beverages are manufactured, sold, kept, bartered, stored or given away, or used in violation of this act, *or where persons resort for the drinking of alcoholic beverages*, and all alcoholic beverages, packages, equipment or other property kept or used in maintaining the same, are hereby declared to be common nuisances, and any person who maintains or assists in maintaining any such common nuisance shall be guilty of a misdemeanor and upon conviction thereof shall be fined not more than $1,000 or be imprisoned for not more than one year, or both. If a person has knowledge or reason to believe that his room, house, building, boat, vehicle, structure or place is occupied or used for the manufacture or sale or use of alcoholic beverages *in violation of the provisions of this act* and suffers the same to be so occupied or used, such room, house, building, boat, vehicle, structure or place shall be subject to a lien for and may be

sold to pay all fines and costs assessed against the person guilty of such nuisance for such violation and any such lien may be enforced by action in any court having jurisdiction." (Italics added.)

The Attorney General stresses the fact that when first enacted, section 195 of Chapter 43, Laws of 1935 (now 46-0-237, U. C. A. 1943), contained the following language:

"or where persons resort for the drinking of alcoholic beverages, *contrary to the provisions of this act,* * * * are hereby declared to be common nuisances".

The Attorney General points out that the words "contrary to the provisions of this act" hereinbefore italicized, were deleted by amendment in 1937. Consequently, he expresses the opinion that the Legislature intended by such amendment to declare a common nuisance, any place where people congregate to drink liquor. It is argued that by permitting club members to come to such private clubs to drink liquor while engaging in usual club activities, such club houses are places were persons *resort* for the drinking of alcoholic beverages within the meaning of 46-0-237.

In short, the Attorney General argues that the very fact that the words "contrary to the provisions of this act," were deleted by amendments made in 1937 indicates a legislative intent to change the substantive law declared in sec. 46-0-237. In support of such construction, the following is quoted from Sutherland on Statutory Construction, 3rd ed., § 1930:

"Because it is defined as an act that changes an existing statute, the courts have declared that the mere fact that the legislature enacts an amendment indicates that it thereby intended to change the original act by creating a new right or withdrawing an existing one. Therefore, any material change in the language of the original act is presumed to indicate a change in legal rights."

In referring to the 1937 act of the Legislature in deleting the words "contrary to the provisions of this act," appellant states in the brief:

"If the Legislature in 1937 had been seeking a way of making a substantive offense of the mere maintaining of a place where persons resort for the drinking of alcoholic beverages, it is difficult to comprehend a simpler way of doing this than the method adopted."

In order to evaluate the correctness of this assertion, it is necessary first to determine the meaning of the deleted phrase in its context in the unamended act, for as stated in sec. 1931 of Sutherland's work on Statutory Construction cited by the Attorney General,

"Since an amendment changes on existing statute, the general rule of statutory interpretation that the surrounding circumstances are to be considered is particularly applicable to the interpretation of amendatory acts. The original act or section and the conditions thereunder must be looked at. Judicial and executive interpretations of the original act especially must be considered. The court will determine what defects existed in the original act, which defect the Legislature intended to cure, and then construe the amendment so as to reduce or eliminate the defect intended to be remedied."

The words, "contrary to the provisions of this act," contained in sec. 195, ch. 43, Laws of Utah, 1935, modify either the whole clause, "where persons resort for the drinking of alcoholic beverages" or they modify the latter part of such clause, namely, "the drinking of alcoholic beverages." A search of the entire 1935 act reveals that nowhere therein, except in sec. 195 itself, is any reference made to places where persons resort for the drinking of alcoholic beverages. Hence, the clause deleted by the amendment in 1937 could not have referred to places to which persons so resort "contrary to the provisions of this act." We assume, then, that the deleted clause modified "drinking of alcoholic beverages."

In the 1935 act, while there are many interdictions against the sale of alcoholic beverages, there is but one place in the act where the drinking of alcoholic beverages is prohibited, namely, sec. 43, Laws of Utah 1935. This section provides that it shall be unlawful for a person to consume any liquor in a state liquor store or package

agency. Consequently, under the act, the only places which might be declared a common nuisance because of the fact that persons resorted there for the drinking of alcoholic beverages would be such liquor store or package agency. In the light of this fact, it appears to us reasonable to assume that the Legislature in deleting the words, "contrary to the provisions of this act" did so because of the incongruity of providing for the abatement as a common nuisance of a place occupied and used by the state agency charged with administration of the act. This conclusion is the more readily arrived at when we consider the grave problem in the application of the construction of the act as amended which the Attorney General proposes and when we consider the overall purpose and object of the Liquor Control Act as originally passed, because under the construction advocated a man's home, a business man's office or warehouse or a hotel room might be declared a common nuisance if several people on frequent occasions met together therein for the purpose of drinking alcoholic beverage, although those drinking alcoholic beverages at such place violated no law.

It is to be noted in this connection that no contention is here made by the plaintiff—nor under the section we are asked to construe might such contention be upheld—that the members of the defendant clubs may not lawfully use lockers of the club for the purpose of storing legally purchased liquor. Nor is it contended that such liquor may not be taken from the club and consumed anywhere except in places specifically interdicted by the Liquor Control Act. Furthermore, nowhere in the act is it made unlawful for a group of people to gather at or to resort to a room, building or any other place for the purpose of drinking alcoholic beverages. Thus, even under the construction contended for by plaintiff, the individual members of the defendant clubs may legally consume alcoholic beverages on the premises of the club; nevertheless the place where such beverage is so consumed may be construed as a common nuisance.

In the very section, the first part of which we are called upon to construe, is a provision which appears to make against the construction contended for by appellant. The portion of Section 46-0-237 not hereinabove quoted reads as follows:

"If a person has knowledge or reason to believe that his room, house, building, boat, vehicle, structure or place is occupied or used for the *manufacture or sale or use of alcoholic beverages in violation of the provisions of this act* and suffers the same to be so occupied or used, such room, house, building, boat, vehicle, structure or place shall be subject to a lien for and may be sold to pay all fines and costs assessed against the person guilty of such nuisance for such violation and any such lien may be enforced by action in any court having jurisdiction." (Italics added.)

Under the first sentence of the section, under the proposed construction, any of the structures therein enumerated may be abated as a common nuisance if people resort thereto for the purpose of drinking alcoholic beverage and the person who maintains or assists in maintaining such place is subject to imprisonment and to a fine up to $1,000. But under the second sentence, should a person know that his room, house, building, boat, etc., is being resorted to for the purpose of drinking alcoholic beverage, nevertheless the place may not be subjected to a lien for the payment of any fine assessed unless such person has knowledge or reason to believe that the place is occupied or used for the manufacture or the sale or the use of alcoholic beverages in violation of the provisions of this act. It appears unreasonable to ascribe to the Legislature an intention to provide for the abatement of a place as a common nuisance because people resort thereto for the purpose of drinking alcoholic beverages, although such persons do not violate the act, while in the same section such place is subject to a lien for the payment of any fine assessed only if the owner knows that it is being used for manufacture or sale or use of alcoholic beverages in violation of the provisions of the act.

But appellant in effects asks, If the amendment of 1937 is not to be construed as contended, what meaning can be

given to the provision under discussion after the amendment of 1937 when such words were deleted? It may well be that the provision incorporated in the original act was retained in 1937 after being amended for the purpose of making less difficult the enforcement of the provisions of the act relative to illegal sale or the illegal possession of liquor—that is, liquor not purchased from the commission. Whether or not it might be efficacious for that purpose, we shall not pause to consider. It is indeed not improbable that the phrase in the provision was retained from the act originally introduced in the 1935 session of the Legislature and has in fact no efficiacy under the present act.

It may be noted in this connection that several sections of the Liquor Control Act which were contained in the act as originally introduced are without present application. Thus, in sec. 46-0-45 there is contained a definition of the word "residence," but nowhere in the body of the act is the word "residence" used.

Likewise contained in the law as enacted is a provision of the bill as originally introduced, which provides that

"It shall be lawful to carry or convey liquor to any state liquor store or authorized package agency or to *any licensee authorized to sell liquor,* and to and from any depot or warehouse established by the commission for the purposes of this act; and when permitted so to do by this act and the regulations it shall be lawful for any common carrier, or other person, to carry or convey liquor sold by a vendor from a state liquor store or package agency, when lawfully sold by the commission or a vendor, from such liquor store or package agency, or from the premises where liquor may be lawfully kept and consumed to any place to which the same may be lawfully kept and consumed under this act and the regulations made thereunder." Sec. 46-0-87, U. C. A. 1943. (Italics added.)

The provision just alluded to was contained in the Liquor Control Act originally introduced in the 1935 Legislature. The phrase hereinabove italicized had definite application in the act as originally introduced. That proposed act differed radically from the one finally adopted. While pro-

viding for a statewide monopoly of the sale of liquor other than by the drink, the original bill also provided for sale by the drink in certain defined eating establishments which the Liquor Control Commission was to have authority to license. Consequently, it was appropriate to provide that liquor might be carried or conveyed to a licensee as well as to a liquor store or a package agency, but the phrase alluded to has no application in the act as finally passed or as amended in 1937, since such licensees are nowhere provided for in the Act. Indeed, the sale, exposing or keeping for sale, of liquor elsewhere than in a state liquor store or package agency and by anyone other than by the Liquor Control Commission and its employees, is made a misdemeanor. Sec. 46-0-156, U. C. A. 1943.

The section of the statute which we are here called upon to construe, as worded prior to the 1937 amendment, was likewise contained in the bill as originally introduced. The bill as noted contained a provision for the sale of liquor by the drink. It also contained a provision, not adopted by the Legislature, prohibiting anyone from consuming liquor in any place other than a residence, except as expressly provided by the act. Since, under such provision, it would be a violation of the law for a person to consume liquor elsewhere than at a residence or at a licensed restaurant, hotel or club, it was efficacious to provide for the abatement as nuisances of places where people resort for the drinking of alcoholic beverages "contrary to the provisions of this act." Under the proposed act, it was not only illegal to sell at a place other than at a state liquor store or agency or at the establishment of a licensee, but it was also illegal to consume liquor at any place other than at a residence or a licensee's place of business.

It is pertinent at this point to note that deletion of the provision which would proscribe the consumption of liquor in any place other than a residence, except as provided in the act, was an intentional and studied rejection by the Legislature. Most sections of the original bill, House Bill

41, were retained in the statute as passed. The final structure of the act developed by a process of extensive amendment in both houses and then only after more than one conference committee had been appointed by the House and Senate in an effort to arrive at agreement thereon. All provisions originally proposed relating to the sale of liquor by the drink and to local option were stricken, and sections of the act containing words or phrases relating to those two matters were deleted or changed. In some sections, however, as hereinabove noted, provisions having no present application were, evidently inadvertently, retained. However, the provision relating to consumption of liquor at a residence only was contained in a separate section of the bill which related to no other subject matter.

Contained in the act of 1935 was sec. 126 which read:

"No person shall be in an intoxicated condition in a public place."

In the 1937 Legislature, in the same act which provided the amendment to sec. 46-0-237 which we are herein called upon to construe, it was proposed to amend sec. 126 of the Liquor Control Act to provide:

"No person shall drink liquor or be in an intoxicated condition in a public place."

This amendment was rejected and there was substituted in lieu thereof the language of the present sec. 126, 46-0-168, U. C. A. 1943, which reads as follows:

"No person shall drink liquor in a public buiding, park or stadium or be in an intoxicated condition in a public place."

There is no prohibition anywhere in the act against the drinking of liquor in any place except those specifically mentioned in the section of the statute just quoted. We will have occasion to advert to this fact presently in the discussion of the literal application of the section of the statute under consideration as applied to the sale of light beer.

Under the glossary contained in the present act, the definition of *alcoholic beverage* includes light beer, but *liquor* is defined so as to exclude light beer. The act contains provisions for the licensing of retailers of light beer both in containers and for consumption on the premises. Yet, if the section under consideration be literally construed, a place where the licensee is licensed to sell beer for consumption on the premises, inasmuch as it is one to which persons resort for the purpose of drinking alcoholic beverages, may be abated as a common nuisance. This absurd result obviously was not intended by the Legislature. We agree with the contention of the Attorney General that while the places where such sales are made might be nuisances under a general section, the fact that they are licensed by authority of the state would remove them from the general operation of the prohibitory section. However, that is but to say that since the state licenses the sale of draft beer, it was not the legislative intention that the legal sale and legal consumption of beer on the premises of the licensee could be the basis of an abatement proceeding under sec. 46-0-237. Nevertheless, we are confronted with the same anomaly when we attempt to apply the provision literally to the situation where a person holding a permit legally consumes legally purchased alcoholic beverages at a place where its consumption is not prohibited by statute. In one case, we hold the beer vendor not subject to the resorting provision of the statute, though his customers resort to his place of business for the purpose of drinking alcoholic beverages, simply because the statute permits such beverage to be there consumed; and yet we are asked to hold that a room or building and its owner or occupant are subject to that section because such owner or occupant permits persons who are not prohibited by law from so doing, to consume alcoholic beverage therein. Under the construction contended for, persons may resort to the premises of a beer licensee for the drinking of alcoholic beverage; but should they choose to purchase the same in bottles and consume it elsewhere, and should this occur

on several occasions, the place where such beverage is consumed is subject to abatement. In the light of the general structure of the statute, other specific provisions thereof and the amendment made thereto contemporary with the amendment of the section being construed, we are convinced that this was not the legislative intent. In support of this conclusion is the construction made of the act by the Liquor Control Commission and other law enforcement officers, presently to be adverted to.

Respondents emphasize in their brief in support of the ruling of the lower court, the contemporary construction of the act. It was stipulated in the court below that the locker system as described had been in existence in Utah at least since 1937; that the maintenance of such a system as various clubs was known to the Liquor Control Commission and that frequent inspections of the clubs were made by enforcement officers of the commission, at least since 1945. It was further stipulated that an opinion rendered by the office of the Attorney General in 1945 construed sec. 46-0-237 as not prohibiting the maintenance of the locker system. It was likewise stipulated that in 1945 the State Senate conducted an investigation of the workings of the present liquor control system during which investigation the locker system then in vogue was brought to its attention; that in 1947 in response to an inquiry of a state senator, the Attorney General's office again stated its belief that such system was not in violation of the law. In another letter addressed to a legislator in 1949 the Attorney General's office, referring to certain inconsistencies in the act, stated that there was a serious doubt as to the legality of the locker system and stated:

"We cannot refrain from respectfuly expressing the hope that the Legislature will clarify the situation in this regard."

Respondents point out that despite this knowledge and advice the Legislature since 1937 has not passed any act specifically making the locker system illegal.

Appellant counters with the argument that the meaning of the statute is clear and, this being so, the doctrine of contemporaneous construction has no application, since the plain meaning of a statute cannot be varied by contemporaneous construction; furthermore, since such meaning is plain, there was no occasion for the Legislature to clarify the statute by amendments subsequent to 1937.

If the premise stated by the appellant were correct, the argument with respect to contemporaneous construction and inaction by the Legislature would have to be sustained. But the premise must be rejected. It might well be conceded that the meaning of the section of the statute under scrutiny, or at least the portion thereof upon which the Attorney General relies, might well be held to be clear and unambiguous if lifted from its context and if other provisions of the statute dealing with the consumption of alcoholic beverage were to be disregarded. But as hereinabove pointed out, when the provision is read in its context and when application is attempted to be made thereof under the construction for which appellant contends, the meaning can hardly be said to be clear and unambiguous. It seems abundantly clear that the several Legislatures, to the attention of which the locker system was called, did not remain inactive because they believed that such system was clearly interdicted under the present law, inasmuch as they were advised to the contrary by the chief law enforcement officer of the State.

In fairness to the position taken by appellant, it must be conceded that the cases cited by him in which the word "resort" is defined and in which the phrase, "which people resort for the drinking of alcoholic beverages," are applied, fully support his contention, if the structure and philosophy of the acts thereby construed be disregarded. However, it must be borne in mind that the construction indulged, in the cases cited, was in jurisdictions where the law being interpreted was a prohibition law whereby the sale of liquor was absolutely interdicted. *State* v. *Owens,* 9 Kan. App.

595, 58 P. 240; *State* v. *Poggmyer,* 91 Kan. 633, 138 P. 593; *State* v. *Topeka Club,* 82 Kan. 751, 109 P. 183, 29 L. R. A., N. S., 722; and *Shelton* v. *State,* 191 Ind. 228, 132 N. E. 594, 595. However, the object and purposes of an act, its structure, and its philosophy, must be examined in giving meaning to its specific provisions. This is particularly true where the provision under examination, if not contradictory of other provisions of an act, is so fraught with difficult problems of application in specific anticipated situations under a proposed interpretation, as to at least suggest a question as to its validity. If so construed, we might confront the question as to whether as a penal provision it is sufficiently certain to give adequate guidance to those who would be law-abiding, to advise defendants of the nature of the offense with which they are charged, or to guide the courts in trying those who are accused. See *Musser et al.* v. *State of Utah,* 118 Utah 537, 333 U. S. 95, 68 S. Ct. 397, 92 L. Ed. 562.

No problem of difficulty of legislative draftsmanship is posed by the construction here made of the statute. That the problem of enforcement—if one exists—might be dealt with by the Legislature with clarity and specificity, is demonstrated by the statute quoted in *State* v. *Topeka Club,* supra.

The judgment is affirmed. No costs are awarded.

WOLFE, C. J., and WADE and CROCKETT, JJ., concur.

LATIMER, J., concurs in the result.