283 P.2d 213

Martin F. ABRAHAMSEN, d/b/a Keystone Readers Service, Plaintiff,

· v.

BOARD OF REVIEW OF THE INDUSTRIAL COMMISSION OF UTAH, Department of Employment Security, Defendant.

No. 8260.

Supreme Court of Utah.

April 27, 1955.

Anderson, Taylor & Tanner, Salt Lake City, for appellant.

Fred F. Dremann, Salt Lake City, E. R. Callister, Atty. Gen., for respondent.

McDONOUGH, Chief Justice.

The Board of Review of the Industrial Commission denied Plaintiff Abrahamsen leave to appeal from the decision of the Appeals Referee of the Department holding that he was liable for contributions to the Utah Unemployment Compensation fund for the years 1952 and 1953. Plaintiff then petitioned this court for review in accordance with the statutory procedure.

Mr. Abrahamsen sells popular publications on a subscription basis and employe one Ralph Coe as a crew manager to handle the actual selling. Mr. Coe, in turn, hires a number of persons, generally boys of an average age of sixteen, to solicit the subscriptions. Collectors are hired by Mr. Abrahamsen to collect on the contracts thus obtained. As to both groups, the salesmen and the collectors, it is conceded that they do not fall within the classification of employees excluded from coverage under The Employment Security Act by U.C.A.1953, 35–4–22(j) (5), (A), (B) and (C), because they are not customarily engaged in an independently established trade. That statute reads:

"Services performed by an individual for wages or under any contract of hire, written or oral, express or implied, shall be deemed to be employment subject to this Act unless and until it is shown to the satisfaction of the commission that—

"(A) such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of hire and in fact; and

"(B) such service is either outside the usual course of the business for which such service is performed or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

"(C) *such individual is customarily engaged in an independently established trade,* occupation, profession, or business *of the same nature* as that involved in the contract of service.". (Emphasis added.)

Plaintiff contends that were it not for Test (C), above, the persons giving service in his business would not be covered by the Act and hence, he would not be liable for contributions. Test (C), he maintains, is unconstitutional in that it violates Article I, Section 24, of the Utah Constitution and/or Article VI, Section 26, of the Utah Constitution by creating an unreasonable classification, resulting in a failure of uniform application of the general law. Since both provisions of the Constitution are directed against legislative creation of discriminatory laws, we need not here consider whether the contribution exacted from employers is to be regarded as a tax,

concerning which special laws are prohibited by Article VI, Section 26.

■ General laws or laws of a general nature, or dealing with a specified subject, must, under our Constitution, have a uniform operation; but such provision does not prevent reasonable classification by the legislature, nor does it require that statutes be universal in their application or their result, or that they operate uniformly with respect to persons or things which are in fact different.

The only question before us is whether or not the purposes of the Act are reasonably served by the distinction between individuals in the same work for the same employer drawn by Test (C).

■ The standard to be followed in the determination of this question was set by the case of State v. Mason, 94 Utah 501, 78 P.2d 920, 923, 117 A.L.R. 330:

"A classification is never unreasonable or arbitrary in its inclusion or exclusion features so long as there is some basis for the differentiation between classes or subject matters included as compared to those excluded from its operation, provided the differentiation bears a reasonable relation to the purposes to be accomplished by the act. * * *

"In order to see whether the excluded classes or transactions are on a different basis than those included, we must look at the purpose of the act.

The objects and purposes of a law present the touchstone for determining proper and improper classifications. * * *

"It is only where some persons or transactions excluded from the operation of the law are as to the subject matter of the law in no differentiable class from those included in its operation that the law is discriminatory in the sense of being arbitrary and unconstitutional. If a reasonable basis to differentiate those included from those excluded from its operation can be found, it must be held constitutional."

At the time of the enactment of the Employment Security Act, the Legislature expressed its purpose in U.C.A.1953, 35–4–2:

"As a guide to the interpretation and application of this act, the public policy of this state is declared to be as follows: Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this state. Unemployment is therefore a subject of general interest and concern which requires appropriate action by the legislature to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his family. The achievement of social security requires protection against this greatest hazard of our economic life. This objective can be furthered by operating free public

employment offices in affiliation with a nationwide system of employment services, by devising appropriate methods for reducing the volume of unemployment and by the systematic accumulation of funds during periods of employment from which benefits may be paid for periods of unemployment, thus maintaining purchasing power and limiting the serious social consequences of unemployment. The legislature, therefore, declares that in its considered judgment the public good, and the general welfare of the citizens of this state require the enactment of this measure, under the police power of the state, for the establishment and maintenance of free public employment offices and for the compulsory setting aside of unemployment reserves to be used for the benefit of unemployed persons."

■ It is clear from this language that the primary objective of such an act is to provide protection for employees; it is not the direct or primary purpose of such legislation to control or regulate the relationship of employer and employee. Plaintiff claims, however, that the effect of Test (C) is to limit, in his situation, his choice between two prospective employees, one of whom has an independently established business selling magazine subscriptions and the other, equally economically secure with a job in a bank or an independent business of, say, trucking. To employ the former

would incur no liability for contributions to the fund; whereas, to employ the latter would mean an increased cost to his business.

It is true that in some rare instances an employer might have to contribute where all of his employees were so financially secure that they need never accept the benefits of unemployment compensation. Likewise, it is possible that an employee's skill might be so much in demand that he need never fear unemployment and its burdens. However, it is far more likely that the worker who is not performing services in accordance with his trade, independently established, will be without an income if he should lose his job than one whose contracts continue despite the loss of any particular one. It was an attempt to differentiate between the economic needs of the two individuals which prompted the Legislature to add Test (C) to the definition; obviously, there is a clear and direct relationship between this classification and the purpose of the Act.

■ The Legislature has the power to enact such acts as this providing against the exigencies of widespread unemployment as an exercise of its police powers, Northern Oil Co. v. Industrial Commission of Utah, 104 Utah 353, 140 P.2d 329. It need not occupy the whole field, but it may strike at the evil where it is most felt, Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 519, 57 S.Ct. 868, 877, 81 L.Ed. 1245, 109 A.L.R. 1327. Further, it is prop-

294

erly within the power of the Legislature to determine the scope of the Act and lay down definitions and tests to be applied in administering it; Unemployment Compensation Commission v. City Ice & Coal Co., Inc., 216 N.C. 6, 3 S.E.2d 290. The mere fact that legislation is made to apply to certain persons and not to others does not affect its validity if it be so made that all persons affected by its terms are treated alike, under like circumstances and conditions; Merchants Supply Co. v. Iowa Employment Security Commission, 235 Iowa 372, 16 N.W.2d 572.

 We are committed to the rule that the court will not interfere with the legislative judgment unless there is no fair reason for the law that would not require with equal force its extension to others which it leaves untouched. State v. J. B. & R. E. Walker, Inc., 100 Utah 523, 116 P. 2d 766. In the present instance, the type of possible discrimination cited by plaintiff is merely the result of the Legislature's not being able to make a perfect classification in all situations based on economic need, but the test in the main is directly pointed toward the achievement of the purpose of the Act.

The decision of Industrial Commission is affirmed.

HENRIOD, WADE and WORTHEN, JJ., concur.

CROCKETT, Justice (concurring).

I concur for the reason that the opinion of Chief Justice McDonough, concurred in by my brethren of the Court, is consistent with the law of this state as established in Leach v. Board of Review of Industrial Commission, Utah, 260 P.2d 744. In view of the ruling of the majority, which I am by no means certain is wrong, it would serve no useful purpose here to further labor my doubts, expressed in that case, as to the constitutionality of this statute, which were grounded upon the proposition that because of a factor extraneous to the contract employment, it discriminates between employees in their eligibility to receive unemployment compensation, and likely in their ability to procure employment; and the further question whether the classification employed could reasonably be considered as purposed toward the declared objective of relieving the burdens of unemployment. It is to be noted here that the facts do not show that the plaintiff is prejudiced by any inequity to employees created by the statute, if any such exists. Insofar as the classification to which we are here directing our attention is concerned, it may as well be that both groups of employees should be covered as that both should be excluded. The fact that such distinction is made, in and of itself, does not adversely affect Mr. Abrahamsen. I have deemed it advisable to record the foregoing, but nevertheless concur in the decision of the Court for the reason first stated above.