305 P.2d 870

The KENT CLUB et al., all nonprofit cor-
porations, Plaintiffs,

v.

Lamont F. TORONTO, Secretary of State of
the State of Utah, Defendant.

No. 8341.

Supreme Court of Utah.

Jan. 5, 1957.

———————◆———————

Ray S. McCarty, Sumner J. Hatch, Salt Lake City, for appellant.

E. R. Callister, Atty. Gen., for respondent.

CROCKETT, Justice.

Original proceeding brought to test the validity of Chapter 25, S.L.U.1955,[1] which provides for the chartering of social and recreational clubs and kindred associations. The act sets up certain regulations for the storage and use of liquor on their premises.

The plaintiff clubs received charters as nonprofit corporations. Their stated purpose is that of furnishing entertainment and recreation, including the serving of refreshments to their members. They have operated under the so-called "locker system" in which individuals keep their own liquor in their individual lockers at the club, and use it as they desire, usually purchasing the mixers from the club.[2]

Aware of the dangers of abuses and undesirable practices in connection with the consumption of liquor in such clubs, the 1955 Legislature enacted Chapter 25 above referred to amending pre-existing laws for the regulation and control of these clubs. In addition to providing for the issuance of charters, it requires that they contain certain provisions and permits the storage and use of liquor under the "locker system" only when the club is operated in conformity with the provisions of the act. Penalties are prescribed for violations, including the forfeiture of a $5,000 bond and the corporate charter.

The plaintiff clubs brought this proceeding to enjoin the Secretary of State from requiring them to comply with the requirements of said Chapter 25 and proceeding thereunder, claiming the act is unconstitutional on these grounds:

A. That the bill creating the act contained two unrelated subjects.

B. That it is uncertain and ambiguous.

C. That it involves a delegation of judicial power.

1. Secs. 16–6–13.1 et seq., U.C.A.1953.

2. See State v. Alta Club, 120 Utah 121, 232 P.2d 759.

D. That it is discriminatory.

E. That it impairs rights of contract.

A. That the bill contained two sub-jects:

Article VI, Sec. 23, Constitution of Utah provides: "Except general appropriations bills and bills for the codification and gen-eral revision of laws, no bill shall be passed containing more than one subject, which shall be clearly expressed in its title."

The basis of plaintiff's contention that House Bill 16, which enacted the present measure into law, violates the above con-stitutional provision is that it provides for the amendment of Sec. 16–6–13, and the addition of three subsections thereto, Sec-tions 16–6–13.1, 16–6–13.2, and 16–6–13.3, dealing with the regulation, control and revocation of charters of nonprofit social clubs, but that the other phase of the act, "providing that the locker system for the storage and serving of liquor shall be legal only when operated by a nonprofit organi-zation" is an amendment of various provi-sions of Title 32, the Liquor Control Act, and thus not germane to the first subject matter mentioned concerning social clubs.

Under the above constitutional provision it is indeed necessary that both the title and the bill be confined to one subject, and that the title contain a clear and adequate description of its contents. This court has heretofore had occasion to amplify such requirement.[3] It appears that the follow-ing general principles should be considered in analyzing such a problem:

■ (1) The title and the act should be surveyed in the light of the purpose of the above quoted section of the Constitu-tion which is to guard against the surrep-titious or inadvertent inclusion of subjects in legislation without legislators and the public being aware of its contents;

■ (2) Due consideration should be given to the fact that legislation is often necessarily comprehensive in covering a whole subject and that it is not invalid simply because certain portions, if con-sidered in isolation, would seem unrelated, but is proper so long as all of the provi-sions have a direct relationship to the sub-ject legislated upon;

■ (3) A liberal view should be taken of both the act and the constitutional pro-visions so as not to hamper the law mak-ing power, but to permit the adoption of comprehensive measures covering a whole subject;

■ (4) That each act must be viewed in its entirety and upon the basis of the cir-cumstances and conditions peculiar to it, and must be regarded as constitutional un-

3. Edler v. Edwards, 34 Utah 13, 95 P. 367.

less it plainly appears that the basic purpose of the constitutional provision is violated.[4]

■ Without burdening this opinion with the details of the provisions referred to, it is our opinion that if surveyed in the light of the above principles, it will be found that the provisions of the Liquor Control Act, Title 32, which are amended,[5] are each directly related to the conduct and regulation of the social clubs, the general subject of the act in question.

B. That the act is uncertain and ambiguous:

■ The plaintiffs argue that the following italicized terms render the act so vague and uncertain that it is invalid. Such terms are found in the following subdivisions of Section 16–6–13.1: (3) Specifying that the club charter shall contain limitations on *"number of members consistent"* with the nature and purposes of the club; (4) Providing for *"reasonable* initiation fees and dues"; (6) Requiring *"reasonable* regulations for the dropping of members for the nonpayment of dues or for *other causes"*; (7) Requiring *"strict regulations"* for the government of the club rooms or quarters generally consistent with the nature and purpose of the club. The emphasized terms above recited are admittedly somewhat nebulous. Yet it must be appreciated that in the drafting of a statute of this nature, which must have uniform application to all social clubs of the class it is purposed to regulate, there must be some leeway for adaptation to the various individual organizations. While the specific terms complained of leave much to be desired as to definiteness, they were apparently designed to provide such leeway and meanwhile to prescribe a general pattern reasonably calculated to fulfill the purposes of the law.

■■ Legislation should not be judicially declared invalid on the ground that it is unintelligible or uncertain unless it is so imperfect and deficient as to render it susceptible of no reasonable construction that will give it effect, or the court finds itself unable to divine the purpose and intent of the Legislature.[6] If the statute is so designed that persons of ordinary intelligence, who would be law abiding, can tell what their conduct must be to conform to its requirements, and it is susceptible of uniform interpretation and application by those charged with the responsibility of enforcing it, it is invulnerable to an attack for vagueness.[7] The act under considera-

4. Kimball v. City of Grantsville City, 19 Utah 369, 57 P. 1, 45 L.R.A. 628; Hansen v. Public Employees Retirement Ass'n, Utah, 246 P.2d 591; Parkinson v. Watson, 4 Utah 2d 191, 291 P.2d 400, 403.

5. Section 32–1–8 and 32–7–3, U.C.A.1953.

6. See Peterson v. Sundt, 67 Ariz. 312, 195 P.2d 158; Coggins v. Ely, 23 Ariz. 155, 202 P. 391; 50 Am.Jur., Sec. 473, p. 486.

7. State v. Packard, Utah, 250 P.2d 561.

tion is operable under that test. It is important to keep in mind that it pertains to the issuance and regulation of such charters and is not a criminal statute involving the sanctions of punishment for crime for failure to comply with its provisions.

C. That it delegates a judicial function to the Secretary of State:

█ It has heretofore been adjudicated by this court in Citizens Club v. Welling,[8] and recently reaffirmed in Entre Nous Club v. Toronto,[9] that empowering the Secretary of State to revoke charters of social clubs for violation of conditions prescribed by statute does not involve such a delegation of judicial function that the act is invalid. In the nature of things, administrative officers cannot perform their duties without exercising some discretion in connection with their official acts. The Legislature has chosen to repose certain duties in the Secretary of State, both in issuing charters to corporations when the requirements of law are met, and in forfeiting them when there is a failure to comply therewith.

The forfeiture of one of these charters does not involve the same basic principles as the taking of property in the ordinary sense. These clubs have voluntarily elect-

ed to apply for and to receive privileges from the State. Such privileges are extended upon the condition that the clubs are willing to comply with the requirements of the law originally, and to continue to abide by them during the lives of their charters. If the requirements are not met, no charter is issued; if violations of the requirements occur, the charters are subject to forfeiture and the privilege withdrawn.

A case which is somewhat analogous dealing with this subject is that of A. R. Young Construction Co. v. Dunne,[10] wherein the plaintiff corporation had failed to comply with the statutes in paying fees and filing statements listing its officers and reflecting various facts pertaining to its corporate status. Pursuant to statute the State Charter Board declared its charter forfeit. As against the same contention here made, the Kansas court stated:

"The corporation owed its existence to the state. The powers and privileges of the corporation were conferred upon conditions imposed by the Legislature * * * when the corporation accepted the charter, it consented to * * * the conditions * * * and the statute itself became a part of the corporate contract. It

8. Citizens Club v. Welling, 83 Utah 81, 27 P.2d 23.

9. Entre Nous Club v. Toronto, 4 Utah 2d 98, 287 P.2d 670.

10. 123 Kan. 176, 254 P. 323, 324; Four-S Razor Co. v. Guymon, 110 Kan. 745, 205 P. 635.

is competent for the Legislature to provide that a corporation shall lose its existence by acts or omissions, the forfeiture to be declared by administrative officers without the intervention of the courts. If the corporation violates * * * by acts or omissions which the Legislature has in plain terms declared shall operate as a forfeiture upon a declaration of a board or of ministerial officers, the forfeiture is complete when the declaration is made * * * the forfeiture must be regarded as legislative and administrative rather than judicial."

Should the Secretary of State act in a capricious or arbitrary manner, anyone aggrieved thereby would not be entirely subject to his whim or caprice, but recourse could be had to the courts through the use of an extraordinary writ. It may well be that it would have been better for the Legislature to spell out a procedure for the inquiry and the forfeiting and charters where the requirements of the act are not complied with, but it did not see fit to do so. In view of the fact that this court is committed to the proposition decided in Citizens Club v. Welling and Entre Nous Club v. Toronto, both supra, we are not now disposed to reconsider such rulings.

D. That the act is discriminatory:

The first argument made is that there is an arbitrary bestowal upon these clubs of special privileges with respect to the storage and consumption of liquor, which is denied the rest of the public, and that it offends against the constitutional prohibition concerning the enactment of special laws granting privileges or immunities.[11] Even if that were so, the plaintiffs would be in no position to complain of special privileges accorded them.[12] Respecting the duties and responsibilities about which plaintiffs complain, it should be remembered that the keeping of liquor and permitting its use is of such a nature that it is directly related to the public morals and welfare so that the "regulation of the manufacture, transportation, sale, and use of alcohol and other intoxicating liquors is an exercise of the police power of the state." [13]

Particular emphasis in the argument concerning discrimination is placed on the requirement of a bond of $5,000. It is plaintiffs' position that this is so high that it allows only financially affluent clubs to enjoy the privileges granted, thus discriminating against others. And further, that in permitting the Secretary of State to forfeit such bond, it not only clothes him with

11. Art. VI, Sec. 26, Utah Constitution.

12. People v. Keilly, 54 Cal.App.2d 764, 129 P.2d 939; State v. Heitz, 72 Idaho 107,

238 P.2d 439; Shearer v. Burnet, 285 U.S. 228, 52 S.Ct. 332, 76 L.Ed. 724.

13. Utah Manufacturers' Ass'n v. Stewart, 82 Utah 198, 23 P.2d 229, 232.

judicial power but allows him to impose an excessive fine [14] for violation of the statute, which would constitute only a misdemeanor, the maximum penalty for which would otherwise be a fine of $300. This latter argument ignores two factors: One is that for a misdemeanor there may be both a fine and jail sentence imposed. Second, the bond is voluntarily furnished by the plaintiffs as a condition to receiving the privileges afforded under the statute, and that the plaintiffs need not subject themselves to such penalty unless they so desire.

The purpose of the bond is to assure operation in accordance with law. If the officers of the club are in good faith intending to comply with the law, there is no reason to apprehend they should have any serious difficulty in obtaining a bond of $5,000, since there will be no forfeiture unless violations occur. There is nothing to suggest that it was fixed at an exorbitant amount for the purpose of including the rich and excluding the poor, or for any other purpose than that of assuring compliance with the law. In the absence of any ulterior motive it is the prerogative of the Legislature to fix the bond, and there is no basis upon which we could say that the provision with respect to the bond is an unjust discrimination against plaintiffs.[15]

Directing attention to the contention that the various duties imposed upon the plaintiffs by the statute amounts to unjust discrimination against such clubs, it is further to be observed that an act is not unconstitutional because it applies only to a certain limited group or class if there is some reasonable basis for the classification which is related to the purposes of the statute and if all within the same class are treated uniformly.[16] This subject was effectively covered by Mr. Justice Wolfe in the case of State v. Mason, 94 Utah 501, 78 P.2d 920, 923, 117 A.L.R. 330, where he said:

"Of course every legislative act is in one sense discriminatory. The Legislature cannot legislate as to all persons or all subject matters. It is inclusive as to some class or group * * * and exclusive as to the remainder. For that reason, to be unconstitutional the discrimination must be unreasonable or arbitrary. A classification is never unreasonable or arbitrary in its inclusion or exclusion features so long as there is some basis for the differentiation between classes or subject matters included as compared to those excluded * * *, provided the differentiation bears a rea-

14. Prohibited by Art. I, Sec. 9, Utah Constitution.

15. See Fresh Grown Preserves Corp. v. U. S., 4 Cir., 144 F.2d 136, 139.

16. See State v. Packard, supra.

sonable relation to the purposes to be accomplished by the act." [17]

 This act is uniform in its application to those who come within its province, treating them all alike and granting to them privileges and imposing duties appropriate to the nature of the function they perform and for the purpose of safeguarding the public morals and welfare.

E. That it impairs contract rights:

 This contention has three facets, (1) that the plaintiffs' charters, issued prior to the present law, amounted to contracts with the State, giving them certain rights which are abrogated or curtailed by imposing onerous conditions as a prerequisite to the enjoyment of such rights; (2) that plaintiffs have subsisting contracts letting to third persons the concessions for serving food and beverages in their clubs, which are now prohibited; (3) that it wrongfully deprives them of their rights to enter into similar contracts in the future.

The general principle that no law shall be passed which impairs the obligations of contract is not to be disputed.[18] It is like-

wise true that ordinarily exclusive privileges granted by the State may not arbitrarily be recalled.[19] However, privileges granted cannot bind to preclude the proper use of the police power since the Legislature may not by contract limit the exercise of the police power to the prejudice of the general welfare.[20] The plaintiffs must be deemed to have known this and to have accepted their charters knowing that they would be bound by such reasonable regulations as the Legislature deemed appropriate to enact.[21] This matter was dealt with in the case of Riggins v. District Court.[22] Thus the issuance of the corporate charters did not create any inviolable rights in the plaintiffs. They indeed have the same constitutional rights of property and contract as all other citizens, but they have no constitutional right to store and serve liquor on their premises. If they desire to continue to enjoy this privilege, they must so conduct their affairs as to comply with the legal regulations pertaining thereto.

The requirement that the clubs must themselves handle the serving of food and beverages appears to have been designed for the effective enforcement of the regulations. If that part of the business could

17. See also Abrahamsen v. Board of Review of Industrial Comm., 3 Utah 2d 289, 283 P.2d 213; State v. J. B. and R. E. Walker, Inc., 100 Utah 523, 116 P.2d 776.

18. See Garey v. St. Joe Mining Co., 32 Utah 497, 91 P. 369, 12 L.R.A.,N.S., 554; 12 Am.Jur., Par. 383, p. 10.

19. 1 Cooley, Constitutional Limitations (8th Ed.) p. 580.

20. Utah Manufacturers' Ass'n v. Stewart, supra.

21. A. R. Young Const. Co. v. Dunne, supra.

22. 89 Utah 183, 51 P.2d 645.

be sublet to third persons, who had not furnished bond or otherwise complied with the requirements of the statutes, and for whose conduct the club would not necessarily be responsible, a way would be open to circumvent the purposes of the act. It was undoubtedly for this reason that the clubs are required to operate the concessions themselves and that subletting is prohibited.

The writ is recalled.

McDONOUGH, C. J., and WADE, J., concur.

HENRIOD, Justice (dissenting).

I dissent for the reasons I stated in the Entre Nous case, cited in the main opinion, and for others set out hereafter.

In my opinion the amendment to the statute places a club in the hands of one man that could destroy a legitimate corporation and assassinate the character of reputable officers, if wielded carelessly by one who, for one reason or another, chose to effect such destruction and assassination.

It is difficult for me to read the amendment and concur with the thesis of the main opinion that it was enacted to cope with abuses in connection with the consumption of liquor. It appears to me to be a statute that can bring sudden death to a corporation and its assets by administra-tive fiat, without benefit of trial before a competent tribunal, sans guaranties of due process,—and what is worse, accomplishable by one single individual. To prove that this statute was not passed primarily to control the consumption of liquor, or its abuses, the statute specifically permits a person to consume any quantity of liquor he desires or can hold, if he buys it from the right people,—the Liquor Commission, —and puts it in a cubbyhole called a locker. Under the act he can become intoxicated as quickly and damply by drinking the same quantum and quality of liquor irrespective of source or where it might be stored when not in transit. He can get as drunk whether the corporation puts up a bond or not. A corporation could live up to most of the conditions of the statute and still have its establishment full of sots. But the corporation cannot live up to some of the conditions of the statute by any stretch of the imagination, because it cannot divine what may be in the mind of any particular Secretary of State, his heirs, successors or assigns, or what they might think are "reasonable" initiation fees, "reasonable" regulations, "strict" regulations and other imponderables, the violation of any of which, *as determined by one man,* could result in the revocation of its charter and the forfeiture of $5,000. With respect to such conditions, in my opinion, the statute makes little sense, and is so vague and indefinite as to apprise no one

of what he legitimately can or cannot do, to such degree that it is unconstitutional. It delegates to the Secretary of State the power of corporate life or death, from Kanab to Cornish, with no reservations except as may exist in his mind, whether good or evil.

It is axiomatic that the best governed are those who are governed by local authority. The purposes of the act, expressed in the main opinion, could be accomplished as well and as effectively by local police under state and local laws existing prior to the enactment of the amendment in question. I believe no one successfully could show that there is a community in the state that does not have the authority, by state statute or local ordinance, to close any social club if liquor is sold in violation of the law. Doing so, however, apparently has its drawbacks, since the accused would have the traditional American right, which has been taken from him by this statute, to face his accuser and the witnesses against him, in an orderly trial before a jury of his neighbors.

Our rights in property and in freedom of enterprise and association seem to me to be too sacred and important to be guaranteed or condemned, not by our courts under proper due process assurances, but by a politician who may or may not be a saint or a tyrant, and who may or may not like the color of one's hair.

In my opinion, this statute is constitutionally objectionable for another reason. All of the corporations mentioned in this action had their charters before the enactment of the 1955 amendment requiring a bond and imposing other conditions. They had a franchise from the state, and for the state to require such drastic new conditions now, after these people have operated under an entirely different law, is, in my opinion, a taking of property without due process of law if they lose their charter because they cannot fulfill the conditions.

WORTHEN, Justice (dissenting).

I dissent.

Title 16, Chapter 6 deals with nonprofit corporations. Section 1 provides that: "any and all societies and associations whose object is *not pecuniary profit,* but is to promote the general interest and welfare of the members, whether temporal, *social or spiritual,* may be incorporated as herein provided." Section 2 requires an affidavit declaring in general that the association has elected to comply with the statute. The affidavit does not provide for a declaration by the association or society that its object is not pecuniary profit.

Prior to the 1955 amendment Section 13 of the act was substantially as amended in 1925 and read, "The secretary of state shall require proof from any social club, recreational or athletic association, or kin-

dred association, incorporating under the provisions of this chapter, that such club or association is a bona fide club or association, the object of which is not for pecuniary profit; that it is organized with actual participating members; and that it will not be used for permitting gambling or any other violation of law or ordinance. If it is afterwards shown to the satisfaction of the secretary of state, after he shall have held a hearing thereon, of which notice shall have been given to such club or association, that any such social club recreational or athletic association, or kindred association, was actually organized for pecuniary profit, or that such association or corporation was or is actually used for gambling or other purposes in violation of law or ordinance, the secretary of state shall revoke the charter of such corporation."

This court in the case of Entre Nous Club held that the provision for forfeiture of the charter upon the showing provided for in said section was a reasonable exercise of the state's police power. There we concerned ourselves with a situation in which a hearing was providing in the normal course and after due notice and the provision for forfeiture was applicable only upon it being made to appear that the law had been violated.

For some reason apparently satisfactory to the legislature no provision is made in the chapter for the other two types of societies, to-wit: temporal and spiritual, to furnish proof to the Secretary of State that they are bona fide clubs, and that the object is not for pecuniary profit and that said clubs will not be used for permitting gambling or any other violation of law or ordinance.

It may have been the idea of the legislature that it was unnecessary to require such proof of temporal and spiritual clubs or of clubs whose object is to promote the temporal or spiritual welfare of the members. The legislature may have felt that the same danger to public welfare does not exist as to the other two types of clubs (temporal and spiritual), although there are many who may have a different opinion.

In my opinion the original act which provided for the revocation of the charter went as far as conscience and fair play would permit by leaving the matter entirely in the hands of the Secretary of State and permitting the determination to be made by him as to whether or not the club was actually organized for pecuniary profit or used for gambling or other illegal purposes. The 1955 Legislature in its amendment to Chapter 6, in my opinion, went beyond reasonable bounds. In amending Section 13 the legislature extended still further the conditions and limitations upon social clubs, recreational or athletic asso-

ciations, but left untouched temporal and spiritual clubs. In addition to the provision of the original section, the act requires that proof be made to the Secretary of State that such club is organized with actual participating members, "*a record of which membership will be continually maintained and available to the secretary of state.*"

The section retains the provision that the club will not be used for permitting gambling or other law violation. After providing that the Secretary of State shall require proof that the club is a bona fide club not operated for pecuniary profit, it provides as follows:

"The secretary of state shall hold a hearing, *after notice*, for purposes of determining whether a club or association incorporating or operating under this chapter is organized or operating in accordance with the law. Notice shall be sufficient if sent by registered mail to the principal place of business or to any of the officers of such club or association."

It should be observed that under the provisions of the act prior to the 1955 amendment it required that "notice shall have been given to such club or association."

The amendment does not guarantee notice in the provision "notice shall be sufficient if sent by registered mail * * *."

In the Entre Nous Club case we had notice given. The amended act requires only that notice be sent by registered mail. No requirement is made for actual notice.

The section then provides that if it is shown after a hearing that any such club or association (1) was actually organized for pecuniary profit, (2) was used for gambling or other illegal purposes, (3) has failed to maintain or make available to the Secretary of State a record of its membership, or (4) "Has failed to procure and file with the secretary of state, within the time herein prescribed, and maintain in good standing a bond as herein provided or has failed to file and/or keep on record with the secretary of state a copy of its constitution, by-laws and house rule which must be in conformity with the requirements of this chapter, or has failed to conform to or abide by such constitution and by-laws and house rules, the secretary of state shall revoke the charter of such corporation."

This section differs materially from the section before the amendment was added in that under the amended section the Secretary of State might, as soon as the social club had posted its $5,000 bond, conclude that the club was organized for pecuniary profit without any evidence during any operation of the club, or that it was used for gambling or other purposes, or that it failed to post its membership list and

its $5,000 bond might be forfeited. Before the present amendment Section 16–6–13 contemplated an operating period by the club during which time the Secretary of State would presumably make investigation of the club's operation, after which investigation the charter might be forfeited *if it was shown to the satisfaction of the Secretary of State that the law was being violated.* The section as amended would indicate that it is not necessary for the Secretary of State to have reason to believe that the law has been violated before holding his hearing, nor to have any complaint or affidavit filed against a club. In a most summary manner the Section declares that he shall hold a hearing for the purpose of determining whether or not the act has been violated. Not even a suspicion is required under the amended section in order to permit the Secretary of State to proceed with his summary investigation.

The act was further amended by adding sub-section 1, requiring a $5,000 bond if the club intends to maintain premises upon which liquor is or will be stored or consumed.

I am constrained to agree with counsel for appellants that Section 16–6–13.1 constitutes an amendment to the Liquor Control Act (Title 32) and constitutes a second subject in violation of Article VI, Section 23 of the Utah Constitution. The amended act, Chapter 25, Laws of 1955, certainly provides in its title for the locker system for storing and serving liquor in addition to the general subject, nonprofit corporation.

I am clearly of the opinion that the act is likewise ambiguous, unreasonable and discriminatory.

It is impossible for me to see any reasonable relationship between any justifiable end and the means adopted by said section. Rather than being calculated to accomplish the purpose desired, they appear to be intended to harass and lay the basis for repeated forfeitures of exorbitant bonds.

If the subject clubs are undesirable, if there is danger of abuse and improper practices in connection with the consumption in such clubs, then the legislature under its exercise of appropriate police power might well be justified in refusing to authorize the operation of any such clubs.

Nor do I feel that the regulations, and forfeitures provided for can do anything except put out of business social clubs with small memberships and limited finances, while permitting a free rein to affluence and wealth in enjoying the privileges which the act denies to the first mentioned clubs.

In my opinion it requires nothing more than the reading of the regulations im-

posed by Section 16–6–13.1 to support appellants' contention that the act is invalid as constituting an unreasonable interference with appellants' business and too uncertain and ambiguous to afford any guide as to what should be done by the Secretary of State. Section 16–6–13.1 provides as follows in part:

"Each club or association, which is required by this chapter to file said $5,000 bond shall also submit a copy of its constitution, by-laws and house rules to the Secretary of State, and each such club or association shall abide by and conform to said constitution, by-laws and house rules. A copy of such constitution, by-laws and house rules and any amendments thereto shall be kept on file with the Secretary of State at all times. The constitution, by-laws and/or house rules shall provide among other things:

"1. That all classifications of members must be admitted only on written application and only after investigation and approval by governing body. Such admissions must be duly recorded in the official minutes of a regular meeting of the governing body.

"2. *Standard of eligibility for members.*

"3. *Limitation on the number of members consistent with the nature and purpose of the association.*

"4. *Reasonable initiation fees and dues consistent with the nature and purpose of the club or association.*

"5. The period for which dues shall be paid and the date upon which such period shall expire.

"6. *Reasonable regulations for the dropping of members for the nonpayment of dues or for other causes.*

"7. Strict regulations for the government of association or club rooms and quarters *generally consistent with the nature and character of the association or club.*

"8. That *rooms and quarters must be under the supervision of a manager or house committee,* who shall be appointed by the governing body of the association or club.

"9. Provisions *for visitors* and for the issuance and *use of guest cards,* which *shall be issued for a period of not to exceed two weeks.* A record of the issuance of each such card shall be maintained and available for inspection by the secretary of state at all times.

"10. That the sale of food and beverages by any such club or associ-

ation must be conducted by the club or association itself and in its own right and not upon any concession basis either to any member of the club or association or to any third party.

"11. That no member, officer, agent or employee of any such club or association shall be paid or directly or indirectly receive, in the form of salary or otherwise, any revenue from the operation of the club or association beyond the amount of such reasonable compensation as may be fixed or voted by the *proper authorities* and *in accordance with the constitution and by-laws of the club or association.*

"12. That said club or association shall not engage in any public solicitation or public advertising of open house activities, banquets, cocktail hours or similar functions.

"13. *That all property of said club or association shall belong to all the members thereof in common.*

"14. That each club or association shall, in its own name, own or lease premises suitable for its activities. If leased premises are occupied by said club or association *the lease must be for at least a twelve month period. A copy of the lease shall be filed with*

*the secretary of state."* (Emphasis added.)

In my opinion the act denies the clubs in question every reasonable semblance of due process of law. It charges the Secretary of State with the enforcement of the act without providing him with any rule or guide as to when and how he must proceed. It requires a *standard* of eligibility for members. What standard is contemplated?

It provides for limitations on the number of members. Who will fix the quota as the basis of determining the same?

Who shall determine what initiation fees and dues are reasonable?

Who shall say what regulations shall be applied for dropping members for nonpayment of dues or *other causes?* What are the other causes?

Who will determine if the *strict regulations* mentioned in sub-section (7) are *consistent with the nature and character* of the club?

Does the amendment prohibit the club from admitting anyone but members and guests with guest cards, or may visitors without guest cards be admitted under sub-section 9?

Is there some public policy that justifies the requirement that leased premises be leased for at least a twelve month period?