406 P.2d 912

**STATE of Utah, Plaintiff and Respondent,**

**v.**

**STARLIGHT CLUB, a nonprofit corporation of the State of Utah, Defendant and Appellant.**

**No. 10372.**

Supreme Court of Utah.

Oct. 26, 1965.

George E. Bridwell, Salt Lake City, for defendant and appellant.

Phil L. Hansen, Atty. Gen., Ronald N. Boyce, Chief Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

HENRIOD, Chief Justice:

Appeal from three convictions after jury verdicts in consolidated cases for trial, each case having to do with selling liquor in vio-

**176**

lation of Title 32–7–1, Utah Code Annotated 1953.[1]

No one contends that there was insufficiency of evidence.

■ Defendant does urge, however, that under the circumstances of this case, the sentence revoking defendant's nonprofit corporate charter,[2] and the imposition of the maximum $2,500 fine *in each case*, aggregating $7,500, offends 1) against Art. I, Sec. 9, Utah Constitution, having to do with interdiction against excessive fines,[3] 2) against the 14th Amendment to the U. S. Constitution[4] and Art. I, Secs. 2 and 24, Utah Constitution,[5] 3) against the same constitutional provisions mentioned in 2) above,—the 14th Amendment to the U. S. Constitution, and Art. I, Secs. 2 and 24, Utah Constitution, and 4) that the law which lets air and railroad companies sell liquor, but not Starlight, is violative of the same two federal and state constitutional provisions. (This was raised first time on appeal, and we are not constrained to canvass it.)

■ This all brings us to the point that defendant, who does not deny its guilt, urges that it should be freed from blame and should be exonerated because others were guilty of the same offense but have not been prosecuted. There is nothing in the record in this case,—the only one before us, to confirm this charge of defendant's counsel, and we are not inclined to reverse a conviction on matters dehors the record. Counsel points to the fact that 119 federal retail liquor stamps were purchased last year (a good number of which were by exempted persons), and names the purchasers. It is then assumed that because they bought them they were all guilty of selling liquor in violation of the statute. Counsel says that such purchase "constitutes prima facie *violation*" of the act under Title 32–8–34, Utah Code Annotated, 1953. That is not so. That section says such purchase "shall be prima facie *evidence in the courts of this state*" of such violation. Many times in criminal cases there is a long haul between prima facie proof and proof beyond a reasonable doubt. Otherwise an accused could not destroy such prima facie case by substantial competent evidence.[6]

---

1. "Except as provided in this act, it shall be unlawful  *  *  *  to sell or offer to sell any alcohol or alcoholic beverage within this state."
2. Title 16–6–1, Utah Code Annotated 1953. (See Ch. 17, Sec. 4, Laws of Utah 1963.)
3. " *  *  *  * excessive fines shall not be imposed  *  *  *." Cf. Kent Club v. Toronto, 6 Utah 2d 67, 305 P.2d 870 (1950); Disabled American Veterans' Club v. Toronto, 12 Utah 2d 213, 3G4 P. 2d 830 (1961), which cite this section.
4. Presumably the equal protection part.
5. Sec. 2, plus Sec. 24, Utah Constitution: "All laws of a general nature shall have uniform operation."
6. No one suggested the possible inconsistency in legislative intent between 32–8–34 and 16–6–13.1. The latter says a corpo-

■ Defendant asked the district attorney to stipulate that there had been no prosecutions under Title 32 for the past two years in Utah except the Elks Club with payment of $250 on plea of guilty. The district attorney obliged, without any authority, we think, with the significant qualification, however, that he would not stipulate "as to any prosecutions had short of the District Court or City Court, and through the County Attorney's Office, either on the state statute or under local ordinance." We think the stipulation could by no means bind this court by negative innuendo that because no one else was prosecuted, defendant was persecuted, and that everyone who had a stamp necessarily must have been guilty,—ergo, defendant was denied constitutional equality of treatment and enforcement, requiring exoneration after thrice it had been convicted. We think such a conclusion is a non sequitur that could lead to rather startling results, requiring for example that a convicted burglar could demand release since many other burglars had not been prosecuted and convicted, or had been treated not exactly the same.

■ Here the defendant, a three-time loser, put the State to its proof in a jury trial in contrast to the Elks pleading guilty to but one offense. The trial court has considerable latitude in disposing of fines and sentences depending on the facts of each particular case, and we think the Elk analogy inapropos.

Counsel for defendant says that the legislation here is rather ridiculous and is not being enforced with equality. He might be right. Possibly confirmed Volstedianwise. Assuming so on both counts it simply 1) indicts the *legislative branch* and 2) accuses the *executive branch* of dereliction in our tripartite system. He says that the *third branch,*—the *judiciary*, should take to task the other two on his assurance that the first two are awry in both the legislation and its enforcement. He says that in order to prove his point, his client should be exonerated, though convicted by a jury. We think that if his contentions are right, the legislative and executive branches are concerned, and that the judiciary should look only to the record presented on appeal,—not on the basis of determining the competency, or lack of it, of either of the other branches of government.

■ Now, on the other hand, the matter of excessive fines is a judicial matter unconnected with the legislation or the gathering of evidence of enforcement of the stat-

---

ration authorized under Title 16, abiding by its articles, "may hold a United States retail malt liquor revenue stamp and at the same time permit members to have, hold, store or possess liquor in or on premises described in such stamp."

It could be urged that the one section *says* such possession is prima facie *evidence* of a violation, and the other seems to *imply* that it is not. This observation is *solely* that of the author, and has nothing to do with the decision in this case.

**178**

ute *in this particular case*. The transcript of the testimony and evidence is not before us, but it is conceded that the basis for the three convictions was as follows: A police officer's wife gained the confidence of a waitress who was induced to sell her a drink. Each sale, of course, would be a technical violation of the statute. This continued for three consecutive Friday nights, commencing January 31, 1964, during which time the police officer joined his wife and bought a number of drinks,—about 10 or 12 in all, each of which could have been the subject of a $2,500 fine,—or an aggregate of $25,000. Had the officer and his wife returned week after week after week, the aggregate fine could have become staggering. The complaints were not filed until December 23, 1964, according to the record, which seems significant.

We feel that the gathering of this evidence, in this particular case, was really one episode designed to terminate defendant's charter, remove what someone thought to have been a loose operation in violation of the statute, and that really but one mission, not three, was accomplished. In this case the continuing violation was nurtured, not reported to a magistrate or stopped, for two or three weeks, nor for 10 more months. Under the particular facts of this case, we think that revocation of the charter, (three times, if you please, two of which obviously

7. Russell v. State, 19 Wyo. 272, 116 P. 451 (1911), seems to involve four sales to four different people, not as in the in-

were impossible) plus a maximum $2,500 fine satisfied the ends of justice, and that two more maximum sentences which had to do really with but one investigation and prosecution, offended against the excessive fine interdiction of the Constitution. We say this in face of the authorities cited by respondent.[7]

We are not about to say that one may be fined only once but we are prepared to say that where it is obvious, as is the case here, that one purchase of liquor, where the maximum penalty is forfeiture of the charter, plus a maximum fine of $2,500, is sufficient and does not justify continued charges and convictions based on continued encouragement to commit crime, under the same circumstances, for an extended period, by the same persons, simply to aggrandize the penalty to make one economically impotent without benefit of bankruptcy. That's why we say that in our opinion, under the circumstances *of this particular* case the constitutional prohibition against excessive fines means something.

We affirm the verdicts and judgment of revocation of charter once and $2,500 fine, but reverse as to any fine in excess thereof. (Italics ours.)

McDONOUGH, WADE and CALLISTER, JJ., concur.

CROCKETT, J., concurs in the result.

stant case, to a duo police officer-wife combination making repeated purchases themselves to gather evidence.