510 P.2d 923

**SALT LAKE COUNTY, a body corporate and politic of the State of Utah, Plaintiff,**

v.

**PUBLIC SERVICE COMMISSION of Utah et al., Defendants.**

No. 12937.

Supreme Court of Utah.

May 21, 1973.

Carl J. Nemelka, Salt Lake County Atty., John G. Avery, Deputy County Atty., Salt Lake City, for plaintiff.

Vernon B. Romney, Atty. Gen., Verl R. Topham, G. Blaine Davis, Asst. Attys. Gen., Salt Lake City, for defendants.

John Crawford Jr., Ralph M. Kirsch, Salt Lake City, for Mountain Fuel Supply Co.

HENRIOD, Justice:

Review of the Commission's order granting rate increases to Mountain Fuel Supply, a local gas-dispensing utility, which increases were allocable to industrial and general consumers (such as residential) on a percentage formula basis. Affirmed.

The application sought the increase as to industrial users only. After a flood of protests from the industrial users and a record of about 2500 pages having to do with gas reserves, diminishing sources of supply, etc., the Commission approved the rates requested but expanded the base not only to include general consumer participation (about $5.61 per consumer per year), but to exact an additional $1,400,000 from the consumers by raising the rates. This was done after the protests and after other hearings and after the Commission, in the interim had given adequate notice that general consumers' rates would be an issue at a hearing before the order finally would be entered.

We think that under the particular facts of this case, where no one seemed to be victim of surprise, the Commission acted within its statutory sanction[1] and that it represented a respectable employment of foresight in protecting consumers in the foreseeable future. Viewed realistically in an atmosphere of threatened exhaustion of fuel supplies, coupled with an increasing demand for energy in an expanding economy, the Commission's action seems to have been both reasonable and authoritative, if unassailable on account of possible constitutional interdictions anent due process.

The nub of this case is whether the Commission arrived at its destination via the constitutional route of due process (or by the suggested collusive route of preferential treatment), with the minimal essentials of due process, including satisfactory notice.

Roughly, the plaintiff here,—and we say this advisedly,—says the Commission did not treat it with purity attributed to the Constitution, but with collusion that rendered suspect its decision and procedure. We do not share the innuendo.

Plaintiff says the Commission acted unconstitutionally because: 1) of failure to give proper notice or have a hearing on the rate increase imposed on the general consumers; 2) it acted on a matter not before it; 3) it granted, without request, a $1,400,000 gratuity, and 4) it erred in a) not granting a continuance, b) not severing the cause and c) in shifting the rate load from one category to another.

We think it not unreasonable to suggest that all of the points on appeal in the last analysis merge in the first point,—alleged denial of due process. It is significant in this respect, that the county appeared as a user and not as a representative of a class, —also that a lawyer representing a general consumer organization and an individual representing himself as a consumer, did not appeal. Nor did any of the 15 or more protestants. This would seem to narrow the issue to one: Did the county, through counsel, have notice, knowledge or a reasonable acquaintance of what was going on to satisfy the due process requirements of Art. 1, Sec. 7, Utah Constitution, and/or the 14th Amendment of the U. S. Constitution?

We think the plaintiff hardly can complain of surprise or lack of notice. The record abounds with facts reflecting that it knew what was astiring, and when, where and why it was. Opportunity to examine everything, cross-examine anyone and otherwise to become autoptic in this case, after its intervention, was granted. It absented itself from some of the hearings, and later, with permission, walked out of the last it attended, with the urgence of the

1. Title 54–4–4, Utah Code Annotated 1953.

Commission that counsel's body might repose in absentia, but the county's body politic still occupied a ringside seat in this encounter. Since plaintiff intervened, it was particeps at all times,—and actually, before its counsel's departure it joined in a pleading asking for the very re-allocation which it now negates.

After several hearings, and motions, and services of notices and publications and after notice given of general users' proposed inclusion in any rate increase, a final hearing resulted in resolving the questioned allocation of rates complained of here. So far as this record is concerned, we think that fair and ample notice was afforded to plaintiff. No one else has objected to that notice or the hearing or the result thereof save the plaintiff, that, having an opportunity to have done so, neither presented any evidence supporting its position, nor advanced any meaningful effort to cross-examine anyone.

There may have been some infirmities in the procedure here, but none that were not healed by continued hearings conducted after adequate notices given. There was no element of surprise to plaintiff, who entered this matter as an intervenor early, as a user and not as a champion for someone else, and left early without any subsequent participation in this case. To have dismissed the application as requested and to

have required a repetition of this case, where everyone had notice of the general consumers' participation in the rate increase, would appear to be a rather useless and unproductive employment of the fact finder's function, based on the request of but one user that, having been given the opportunity to present its substantive, rather than technical case, didn't.

CALLISTER, C. J., and ELLETT and TUCKETT, JJ., concur.

CROCKETT, Justice (dissenting):

I dissent. It is my opinion that no proper notice was given to the public and persons who might be interested; and that consequently, the defendant Commission did not acquire jurisdiction to enter the order hereunder attack.

A proceeding to adopt a general rate increase by a public utility affects the interests of the general public. They are entitled to due and adequate notice.[1] The giving of such a notice is the equivalent of service of summons in a civil suit. It is thus the foundation upon which the propriety of the proceeding depends and the means by which the Commission acquires jurisdiction. As is shown below, I do not regard the notices and the manner in which they were given as adequate and proper notice to the public that rate increases might be imposed upon them. In

1. See Entre Nous Club v. Toronto, 4 Utah 2d 98, 287 P.2d 670 (1955).

fact, they could very well be viewed as an effort to obscure that objective.

It is my impression from the record that the Salt Lake County Attorney was representing not only the interest of the County, but also that of the general public. This is shown by the comments of Mr. Avery, Deputy County Attorney, at the rehearing convened on April 18 which was characterized in the notice as "Rehearing Limited to Specified Matters . . . etc."

Mr. Avery: You take this Order upon which publication is predicated. .I defy an average layman to read out of that that there is now a general rate increase considered for general service customers by the Commission.

Now, what is adequate notice?

Another thing, while the scope of the issues may have been discussed, the parties were not here from the inception, the parties that should have been . . . .

Commissioner Warner: Mr. Avery, in this rate schedule which has been filed, which is a proposed rate schedule how do you claim the filing of this schedule prejudices you in any way . . .

Mr. Avery: I'm saying, sir, *everyone is prejudiced.*

The scope of the hearing did not contemplate *that general service customers* were in issue . . .

The Commission itself seemed to recognize that Salt Lake County was representing the public interest in the proceeding.

Commissioner Bennett: At this time I would like to thank the County Attorney Mr. Avery and Mr. Theodore for being in attendance at our hearing and the Commission does appreciate the interest the County Attorney's Office has taken in this problem, and I might state at this time that the Public Service Commission takes its responsibility seriously, too, . . .

Notwithstanding the foregoing, I do not disagree with the position of the main opinion: That Salt Lake County is in no position to complain of lack of notice as to itself *as an individual user.* But the important fact is that it was objecting to the notice that had been given, not only as to itself, but on behalf of the public, i. e., the general service users. It is because of this broader interest the public has in the proceeding, and that there was no proper notice, which fact was called to the attention of the Commission,[2] and is urged by the County in this court, and more importantly,

2. Additionally, Mr. J. C. Archer on behalf of himself and others similarly situated, by letter of April 6, 1972 to Mr. Frank S. Warner, Chairman of defendant Commission stated, "No notice . . . has been furnished to the General Service users of any rate increase applicable to them. . . . The Commission has ignored its own rules and the right of the General Service users to due process . . ." Mr. Warner responded by letter of April 13, 1972 and therein recognized

because this court has both the prerogative and responsibility of noticing and passing on the matter of jurisdiction,[3] that I have deemed it appropriate to make my observations.

This proceeding as initiated was not proposed to affect the rates charged the public (general service users), but the industrial users. It was as a development from that proceeding that the Commission decided to impose the burden of 1.47 million dollars for development and exploration upon the general service users. Pursuant thereto the Commission caused a notice to be given and published which in its caption contained no reference whatever to a proposed increase in rates charged the public. The notice as published was:

### NOTICE OF FURTHER HEARING
### CASE NO. 6369

### BEFORE THE PUBLIC SERVICE COMMISSION OF UTAH

In the Matter of the Amended Application of MOUNTAIN FUEL SUPPLY COMPANY for an increase in rates and charges for natural gas service in Utah.

Notice is hereby given that a further hearing will be held before the Public Service Commission of Utah in the above-entitled matter on Monday, March 13, 1972, at 10:00 a. m., at the Commission's hearing room, 330 East 4th South Street, Salt Lake City, Utah, to consider a proposed schedule of increased rates and charges for natural gas service in the State of Utah, submitted to the Commission by Mountain Fuel Supply Company pursuant to the Commission's order in this proceeding dated February 17, 1972. The rate schedules submitted by the company would result in an increase for all customers of Mountain Fuel Supply Company in the State of Utah.

At such hearing, interested parties will be afforded an opportunity to examine witnesses for Mountain Fuel Supply Company in respect to the proposed schedule of rates and charges and to offer testimony in respect thereto.

The proposed schedule of rates and charges submitted by Mountain Fuel Supply Company is available for inspection at the office of the Commission, and also at the main and divisional offices of the company.

By order of the Commission.

Dated at Salt Lake City, Utah, this 1st day of March, 1972.

JEAN MOWRY,

(A-3)                    Acting Secretary

that better notice may have been given but because of considerations of time and money, and the lack of prejudice to anyone resulting therefrom, that the notice actually given was sufficient.

3. Where trial court is without jurisdiction, reviewing court raises matter on its own motion, see Miller v. St. Regis Paper Company, 60 Wash.2d 484, 366 P.2d 214, 374 P.2d 675 (1962); also see Adamson v. Brockbank, 112 Utah 52, 185 P.2d 264 (1947); Dixie Stockgrowers' Bank v. Washington County, 81 Utah 429, 19 P. 2d 388 (1933).

It is to be noted that it is not until down in the middle of the above fine print notice that anything is said indicating that "rate schedules submitted by the company would result in an increase for all customers of Mountain Fuel Supply." This notice was of the same type as characterized in Mullane v. Central Hanover Bank & Trust[4] as ". . . in small type inserted in the back pages of a newspaper . . ." so that there is little likelihood that it would be noticed by John Doe public.

At the hearing of March 13th, as a result of objections because of defects in notice, a rehearing was scheduled and another notice ordered to be given and published, which was done. The obscurity of the first notice was compounded by this second one. It was captioned:

### CASE NO. 6369

ORDER GRANTING PETITIONS FOR REHEARING LIMITED TO SPECIFIED MATTERS; SETTING DATE FOR HEARING THEREON; SETTING DATE FOR HEARING APPLICATION OF SALT LAKE COUNTY; AND NOTICE OF SAID HEARINGS.

### BEFORE THE PUBLIC SERVICE COMMISSION OF UTAH

In the Matter of the Amended Application of MOUNTAIN FUEL SUPPLY COMPANY for an increase in rates and charges for natural gas service in Utah.

and it continued for approximately 15 inches of fine print until the following language appeared:

IT IS HEREBY ORDERED AS FOLLOWS:

1. This Commission shall rehear and reconsider the following specified matters only:

a. The issue of amending the domestic and commercial rates and charges to include an additional allowance to the applicant for increased exploration expense of One Million Four Hundred Seventy Thousand Dollars ($1,470,000). In this respect the application of Salt Lake County filed on March 9, 1972, shall be set for hearing at the same time and place as hereinafter provided for the rehearing this issue and the other issues specified herein.

b. The issue of the allocating among the various rate classifications all increases in the rates and charges of the applicant which this Commission determines to be proper.

The latter was the only reference in a total of 24 column inches to the issue of the potential increase in the rates of general service users.

4. 339 U.S. 306, 315, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

The candor of the defendant Mountain Fuel Supply's own reply brief is appreciated wherein it states:

> Yet it is possible, of course, due to the highly technical nature of the testimony and exhibits, *that an attorney not well versed in utility rate proceedings would have some difficulty determining the full impact of the various proposals.* However, after the initial phase of the hearings was completed, and the applicant, Commission Staff, and the protestants had submitted briefs and counter briefs which fully argued and clearly exposed the content of the various proposals, *no attorney could have reasonably doubted that the general service customer was exposed to a rate increase in these proceedings.*

This frank concession as to the difficulty an attorney might have in understanding what was proposed in the proceedings, applies a fortiori, several multiples, to the ordinary member of the general public.

Every citizen conscious of what is going on in our area is aware of an extensive, effective and constant advertising and public relations campaign to promote the goodwill of Mountain Fuel Supply. It would indeed be a bit unusual but refreshingly forthright if part of that effort were devoted to inform the public of a proposed rate increase and justification therefor; and it would be in dramatic contrast to what was actually done.

I do not impute to the defendants any deliberate attempt to deceive the public or conceal from them the real purpose of the proceeding. But whatever the cause or motivation for the particular form and manner of giving notice employed here, the effect was the same. That is, in my opinion it did not constitute a reasonable and practical notice to the public sufficient to provide a proper jurisdictional foundation for the proceeding. Accordingly, I have felt impelled to voice my disagreement with the procedure that has been followed. (All emphasis added.)